The opinion of the court was delivered by
Tilghman, C. J.
This' was a scire facias on a mortgage of a tract of land in Susquehdnna county, given by the defendant to the plaintiff; and bearing date the 10 th of November, 1818. The defendant pleaded payment, with leave tó give the special matters in evidence, oh which issue was joined; and afterwards, agreeably to the rule of court, the defendant gave notice of the matters intended to be offered in evidence,1 of which the following sketch will be sufficient, for the purpose of explaining my Opinion. In the year 1803, the late Henry Drinker, of the city of Philadelphia, deceased, being proprietor of a large body of land in Susquehanna county, made contracts with sundry persons for the sale of divers tracts; and particularly with a certain Elias West, for the sale of 150 acres, with the allowance of six per cent, &c. In the year 1810, after the death of the said H. Drinker, John B. Wallace, of the city of Philadelphia, Esq. who had purchased the right of Drinker, in part of his lands, from his executors, (and particularly the right to the mortgaged premises) convened the settlers, and made new contracts with them, by which they were to have the lands formerly agreed to be purchased of the said Drinkel, for two dollars per acre, on a certain specified credit. West having sold his right to 80 acres, part of his 150, to Edward Fuller, Wallace contracted with West for 100 acres, and with Fuller for 50 acres, at the said price of two dollars an acre. In the year 1812, West, who had made considerable improvements, sold his 100 acres to Samuel Kellum; in 1815, Kellum, who had also made Valuable improvements, sold to the defendant. Previous to the defendant’s purchase, Wallace conveyed all his interest to Horace Binney, of the city of Philadelphia, Esq.; who, in the year 1814, conveyed to the plaintiff. Thus the plaintiff became seised of the legal estate iff the mortgaged premises; but he recognised all the contracts *141 made by Wallace, and declared that he would keep them. Before Kelhxm had parted with his interest, he informed the plaintiff that he was ready to pay his money, although it was not then due; but the plaintiff told him, he did not want the money, as it would bear interest; but that Kellum had better lay it out in improvements, which would be equal to a profit of twelve per cent; while he would have to pay but six per cent for interest. A short time after the purchase money became due, the defendant offered it to the plaintiff, who told him that there were more than 100 acres within his line, the overplus of which he, (the plaintiff) was entitled to; and that in that overplus he would take the defendant’s orchard and buildings. The defendant offered to purchase the overplus, and asked what would be the price; to which the plaintiff answered, that the defendant should not have it, unless he would pay for the whole land at the rate of five dollars an acre. The plaintiff alleged also, that the Wallace contract had becomes void by default of payment of the purchase money at the stipulated time, and that the defendant had now no more right to the land than a stranger. The plaintiff afterwards offered to take four dollars an acre; but ■ this the defendant refused. In the year 1815, the plaintiff brought an ejectment against the defendant, who employed Davis Dimock, Esq., as an agent and mediator, with a view of coming to a final agreement with the plaintiff. Mr. Dimock spoke to the plaintiff on the subject, who expressed his willingness to come to an amicable and reasonable agreement; and promised that he would proceed no farther in the ejectment. Notwithstanding this promise, the plaintiff, contrary to good faith and in violation of his promise, obtained a judgment against the defendant by surprise, and sued out a writ of habere 'faciaspossessionem. Remonstrances having been made against this conduct, the plaintiff again promised that he would settle the dispute on reasonable terms, and submit the case to arbitrators, to which the defendant agreed. Mean while, the service of the execution was suspended, and the defendant retained the possession. The arbitrators met, but the plaintiff told them he wished to have their opinion; although he would not consent to be bound by it. The arbitrators proceeded to consider the case, and were deceived by the plaintiff, who read what he called a letter from John B. Wallace, Esq.; in consequence of which, and other false allegations and misrepresentations, an award, or rather an opinion was delivered, that the defendant should pay for his land, at the rate of five dollars an acre. After this, the plaintiff insisted on the defendant’s paying five dollars an acre, and also the costs of the ejectment, and twenty dollars for a fee to counsel. The defendant, deceived by the supposed letter from J. B. Wallace, and other misrepresentations of the plaintiff, and supposing that he was at his mercy, in consequence of the judgment in the ejectment, came into his terms, accepted a .conveyance of the land, and gave the mortgage which is now in suit. This is a summary of the *142 special matter, and when the ..pie*®*# came to offer the evidence on the trial of the cause, it was objected to by the plaintiff both in the whole, and in detail; but the court admitted it; in consequence of which several bills of exceptions were taken. This plea of payment, with leave to give special matters in evidence, is peculiar to Pennsylvania; and has been introduced, for the purpose of letting the defendant into an equitable defence, unembarrassed by form. In substance, it often amounts to a bill in equity, and if the defendant makes out a case on which he would be entitled to relief in equity, he will be entitled to a verdict here. But, if in his notice of special matter, he presents a case in which equity would afford no relief, the plaintiff, instead of putting the cause to the jury, may object to the evidence, and pray the opinion of the court on it. And if the court is of opinion, that it is a case in which - equity Would not relieve, the evidence should be rejected in tolo, as irrelevant; or, if any part of it is such as would not be received in equity, that part should be rejected. One ground of objection to the evidence in the present case was, that unless the mortgage given by the défendant could be impeached, by evidence of some fraud or imposition at the time of its execution, no evidence of prior transactions should be admitted. Another objection was, to the admission of evidence of fraud or irregularity in obtaining the judgment in ejectment; because that judgment was in Force, and ought not to be thus collaterally attacked. These objections appear to me to be founded on too limited a view of the subject. The defence consisted of a number of facts which took place at various times; but were of a connected nature, and all tended to constitute one whole. The defendant did not allege that he was deceived as to the contents of the mortgage. He knew very well what he was doing when he executed it. But unless he was permitted to show, that he had once purchased his land at the price of two dollars an acre, it could not appear that he was oppressed by the plaintiff’s insisting afterwards on five dollars. And as to the judgment in ejectment, the defendant did not deny that it was in force, but insisted that it had been obtained by surprise, and used for an unrighteous purpose; so that, on the whole, the proceeding was against equity and good conscience. It is in vain to say, that there is no safety in property, if judgments, and bonds, and mortgages are not to stand. The same argument strikes at the root of all relief in equity, founded on fraud; and, if yielded to, would introduce a system of villainy under which society could not exist. The setting aside of solemn contracts, should be considered by courts of justice as no light matter; and while, on the one hand, they permit them to be impeached for fraud, on the other, they should afford them all reasonable protection; and uphold their obligation, unless the fraud be clearly proved. On the present occasion, I.do not see how the equity of the case could have been fully understood, if any part of the evidence had been excluded. *143 And without intending to express an opinion on the merits of the cause, it is sufficient to say, that it would have been too much for the court below to declare, that the special matter of which the defendant gave notice, showed a defence not proper for the jury to hear, because totally irrelevant in equity. There is one part of the case particularly interesting — under what circumstances did the defendant conclude to give the mortgage? Was it under a full knowledge of the circumstances in which he stood, in point of fact? Was it after arbitrators of his own choosing, had made an award, or even expressed an opinion, not induced by fraud or misrepresentation on the part of the plaintiff? A compromise made, with full knowledge of existing circumstances, though these circumstances be hard, is binding, in general, unless they were brought about through the intervention of one of the parties. A man who agrees to sell his lands at a low price, to a creditor by whom a judgment has been severely but fairly obtained, is bound by his bargain. So, a man who has been sorely but fairly pressed,' in an ejectment, and agrees to give an extravagant price, rather than be turned out of possession, must abide by his contract. When this cause comes to be tried again, special attention should be paid to the conduct of both parties, from the commencement of the ejectment to the date of the mortgage. I am of opinion, that in general, the evidence offered by the defendant was properly receiyed; but there is one exception which turns on the competency of the witness. John Bard was offered as a witness on the part of the defendant; and objected to by the plaintiff as incompetent;because interested. His interest appeared as follows. In an affidavit made by himself, in an action brought against him by the plaintiff, and still depending, Bard had purchased of Wallace, at two dollars an acre. He was afterwards induced by the plaintiff to make a new contract at five dollars an acre. But before Bard would come into the new contract, he observed to the plaintiff, that Henry Parke, (one of the purchasers) stood out upon the Wallace contract, and perhaps would get his land according to that contract; upon which the plaintiff promised, in' the presence of witnesses, “ that if Parke, or any other settler, got the land according to the Wallace contract, Bard should have it at the same rate.” Now, the defendant in this case, made defence under the Wallace contract, and actually brought all the money to which the plaintiff would be entitled under that contract, into court, where it still remains; and the jury gave their verdict on the ground of the Wallace contract. So that, if this judgment stands, it may be given in evidence in the action brought by the plaintiff against Bard, in order to prove, that one of. the settlers has succeeded under the Wallace contract. It will establish a fact, in consequence of which Bard will get his land for two dollars an acre, instead of five. He had a direct interest therefore, in the verdict; and consequently was incompetent. There was error,. *144 then, in admitting Bard as a witness, and it is the only error in the record. I am of opinion that the judgment should be reversed, and a venire de novo awarded.
Judgment reversed, and a venire facias de novo awarded.