## Wright *against* Smyth.

Mutual covenants are to be construed as dependent or independent, according as it may best concur with the design of the whole instrument and effectuate the intention of the parties.

Unliquidated damages for violation of a separate and independent covenant made by the plaintiff, are not a subject of defalcation or set-off in an action for breach of the defendant's covenant.

Where an authority to appraisers to make a list of debts is doubtful on the face of an agreement, acts of the party inducing them to exercise such authority are evidence.

ERROR to the District Court for the city and county of *Philadelphia*, where a verdict and judgment were rendered for the plaintiff, Bartholomew Smyth, against Samuel Wright.

The plaintiff declared against Wright as the guarantor of a contract made between George W. Delaway and the plaintiff. On the 8th of February 1833, Smyth & Delaway, by writing under seal, agreed to enter into partnership for conducting the business of a marble yard under the firm of Delaway & Smyth. By the first article, Smyth was to advance $1000 as the first capital, the knowledge of business possessed by Delaway over Smyth being considered an equivalent for the $1000, subject to article 6. The other articles stipulated that Delaway should be the active partner— only $200 to be drawn out annually by each—each to be entitled to half the profits on a regular annual settlement, which were to remain invested—and six per cent. on moneys advanced. By the 6th article, in case of dissolution, the $1000 were to be repaid to Smyth out of the capital, "in case said stock or capital should amount to as much," and the residue divided equally.

[Wright v. Smyth.]

On the 16th of February 1836, a dissolution took place under an agreement as follows: " All the real estate belonging to the late firm or to the said partners, as tenants in common, shall be valued and appraised by two competent persons, one to be chosen by each party and to have the right to appoint an umpire in case of a disagreement, and the personal property, stock in trade, and effects, outstanding debts and credits belonging to the late firm to be examined, valued and appraised by two competent persons, one to be appointed by each party and to have the right to appoint an umpire in case of their disagreement..

All the said estate, real and personal, debts and credits, are to be taken by the said Bartholomew Smyth at the valuation and appraisement so made.

All the debts due by the late firm, are to be assumed and forthwith paid or settled by Bartholomew Smyth, and all the unfinished jobs on hand are to be taken and finished by him at his cost and for his exclusive profit on the work left to be finished.

The amount of the said valuation, over and above the amount of the debts so to be assumed and paid or settled by the said Bartholomew Smyth, including $1000 due to him by the late firm, is to be equally divided between the said parties; the share of the said George W. Delaway is to be forthwith paid to him in stock, or if there shall not be enough stock, then in stock so far as the same will go, and the residue in the *outstanding* debts due to the late firm; the said stock, (and debts) to be forthwith assigned and delivered to him according to the valuations.  And all the residue of the said estate, real and personal, outstanding debts, and credits to be forthwith made over and delivered to the said Bartholomew Smyth, the same to be taken at the valuation aforesaid.

The said parties to give to each other full and sufficient security for the full and entire compliance with this agreement, and also for the full protection of and indemnity to all persons or person who have given security for the late firm; and the said George W. Delaway to give further sufficient security, that the said firm shall appear by the said valuations and appraisements to have been entirely solvent on the 3d of February, last past: and also, that no debts shall appear or come against the said Bartholomew Smyth, of his the said Delaway's contracting, other than such as appear by the books of the said firm or are otherwise reasonably within the present knowledge of the said Bartholomew Smyth, and if any such should appear he the said George W. Delaway shall pay and discharge his just and rateable share thereof, and that if any error or mistakes or errors in the books or accounts committed by him the said Delaway shall be hereafter sufficiently made to appear, he the said Delaway shall discharge and pay his just and legal proportion thereof, and that the same shall be rectified as to law and justice shall belong.  And it is further agreed, that whatever balance shall be due to either of the said parties upon the

[Wright v. Smyth.]

due settlement of the accounts and books shall be forthwith paid or allowed to him by the other."

On the 16th of March following the persons mutually appointed appraised the real estate at the sum of $2500. They appraised the debts owing them at $1728.44, omitting in this a debt due by Ellmaker's estate, which was considered good and afterwards recovered. They annexed a list of "debts owing by the firm," amounting to $5427.07, which they certified in the same manner as the former; one claim of which was "bill owing B. Smyth including the $1000 specified in the written agreement."

The narr. set forth these agreements and the appraisements, and averred that the plaintiff afterwards, to wit, on the day and year last aforesaid, assumed and forthwith paid or settled according to the terms of the said agreement between the said plaintiff and the said George W. Delaway, and the said plaintiff in fact further saith that afterwards to wit, on the day and year last aforesaid he the said plaintiff paid and assumed sundry debts due and owing by the said firm at the time of said agreement between the said plaintiff and the said Delaway, amounting to the sum of $500 which were not included in the said last-mentioned valuation and appraisement, and which were not within the knowledge of the said plaintiff at the time of making the said agreement, nor did they appear by the books of the said firm. And the said plaintiff in fact further saith that the said last-mentioned appraisers did also examine, value and appraise the personal property, stock in trade and effects and credits belonging to the said firm, and did afterwards, to wit, on the day and year last aforesaid at the county aforesaid, by an award under their hands duly made (which said last-mentioned award the said plaintiff now here into court brings) report and award that they appraised the same at the sum of $1728.44, which said last-mentioned personal property, stock in trade, effects and credits were afterwards, to wit, on the day and year last aforesaid, taken by the said plaintiff at the valuation and appraisement last-mentioned, according to the terms of the said agreement.

And the said plaintiff further saith that although he the said plaintiff hath always from the time of making of the said agreement hitherto well and truly performed, fulfilled and kept all things therein contained on his part and behalf to be performed, fulfilled and kept according to the tenor, and effect, true intent and meaning thereof, the said plaintiff saith that the said firm was not solvent on the 3d of February 1836, neither did it appear by the said valuations and appraisements to have been then solvent, but on the contrary thereof the said firm on the said last-mentioned day was wholly insolvent and its debts then amounted to $1304.87 more than its assets, and it so appeared by the said valuations and appraisements, contrary to the tenor and effect of the said agreement between the said plaintiff and the said George W. Delaway,

IV. — 67　　　　　2 U

[Wright v. Smyth.]

and of the covenant of the said defendant in that behalf made as aforesaid.

And the said plaintiff further says, that debts to the amount of $500 did, after the making of the said agreement between the said plaintiff and the said George W. Delaway, appear and come against the plaintiff of his the said George W. Delaway's contracting on behalf of the said firm other than such as appeared by the books of the said firm, and which were not within the knowledge of the said plaintiff at the time of the said agreement, and which said debts the said plaintiff was afterwards, to wit, on the day and year aforesaid, obliged to pay and assume payment of, and did actually pay or assume payment thereof contrary to the tenor and effect of the said agreement between the said plaintiff and the said George W. Delaway, and of the covenant of the said defendant in that behalf made as aforesaid.

And the said plaintiff further saith, that upon the due settlement of the accounts and books of the said firm, a balance was found in favour of the said plaintiff amounting to $2154.03, which said sum the said George W. Delaway did not forthwith pay to the said plaintiff, nor hath he at any time paid the same or any part thereof to the said plaintiff, according to the form and effect of the said agreement so made as aforesaid between the said plaintiff and the said George W. Delaway, and of the covenant of the said defendant in that behalf made as aforesaid, but on the contrary thereof the same remains wholly unpaid. And so the plaintiff saith that the said defendant hath not kept the said covenant so by him made as aforesaid, but hath broken the same, and to keep the same with the said plaintiff hath wholly neglected and refused, to the damage of the said plaintiff of $5000, and therefore he brings his suit, &c.

On the trial the plaintiff offered in evidence the appraisements of real estate and stock, and personal estate and debts due by the firm, having previously proved by a witness that at the meetings of the referees, Delaway said they were to settle everything, and brought the books and gave them to them to examine, and that they were urged by the parties to examine thoroughly. The defendant objected, but the court overruled the objection, and sealed a bill of exception.

The plaintiff then showed an agreement under seal, on the 23d of August 1836, between him and Delaway. Also a judgment on a suit to December 1835, by Brooks against Delaway & Smyth, and Hitner against same, satisfied 22d of December 1840. Also judgment of 19th of October 1837, by Amos & Davis against Smyth & Delaway, (of March term 1836), in which a *fieri facias* and *ca. sa.* were issued against Delaway. Also suit to March term 1837, Taylor & Eckstein against Delaway & Smyth, satisfied 5th of January 1841. Delaway took the benefit of the insol-

[Wright v. Smyth.]

vent laws on petition in October 1837. He swore as a witness for the defendant that he was broke up by the debts of Delaway & Smyth coming against him.

The defendant requested the court to charge the jury:

1. That the plaintiff was not entitled by law to recover in the said action, inasmuch as the declaration did not contain any allegation that the defendant had stipulated that the said firm of Delaway & Smyth should appear to have been solvent, nor did any such stipulation appear to have been made by the defendant.

2. That the plaintiff was not entitled to recover in this action, inasmuch as the declaration did not allege that the said Delaway had failed to give further security that the said firm should appear to have been solvent according to the terms of his said agreement.

3. That the plaintiff was not entitled by law to recover in this action, inasmuch as he had not paid the debts of the late firm of Delaway & Smyth before the institution of the suit, nor for a long time after the commencement of the same.

4. That the plaintiff was not entitled by law to recover in this action, inasmuch as no demand had been made on the said Delaway to carry into effect the provisions of his said agreements, nor had any notice been given to the defendant of the plaintiff's claim, before bringing the said suit, nor was any such demand or notice alleged by the declaration.

The court refused so to instruct the jury, and charged them:

1. That the plaintiff was by law entitled upon the present declaration, if there was no other objection to his recovery, and that the defendant was bound by his agreement that the firm should appear to have been solvent by the said valuation and appraisements of the real and personal estate of the firm, subject only to correction of errors in the said appraisements in omitting to value or appraise any of the said estate real or personal.

2. That the covenants contained in the agreement of the 16th of February 1836, were independent covenants, and that the plaintiff was entitled to recover, although he had not paid or settled the debts of the firm before the institution of this suit, if there was no other objection to his recovery.

3. That the claim by the defendant for any damage sustained by reason of the failure or omission of the plaintiff to pay or settle the debts of the firm, could not be the subject of set-off or deduction in this action, but must be the subject of another and a different cause of action, if any such claim existed.

4. That no demand on Delaway, nor notice to the defendant, before bringing the suit, was necessary to be alleged or proved, if the jury were of opinion that Delaway was insolvent when the said agreement was made on the 16th of February 1836, and afterwards at the time of bringing this suit.

[Wright v. Smyth.]

The defendant excepted to the charge, which was assigned for error, as well as the admitting in evidence—1. The valuations and appraisements of real estate and stock, and personal estate and debts due to the firm. 2. The valuation of the debts due by the firm. 3. The day-book, leger, cash-book and work-book of the firm.

*St. George Campbell* and *Williams*, for plaintiff in error. The plaintiff could not recover, having neither assumed nor paid the debts of the firm at the institution of the suit. The rule is that the intention is to govern in determining whether covenants are dependent or independent. 4 *Rawle* 35. Here the principal consideration with the defendant in entering into the agreement of dissolution was, to be relieved from his responsibility to the creditors of the firm, and be enabled to enter into another business, instead of which the plaintiff omitted to pay or settle the debts, and suffered the defendant to be sued for those debts until he was driven into insolvency. Several of these debts remained unsatisfied till the day of trial. At all events, the plaintiff ought to have paid to the extent of the partnership property, and if that was exhausted should have averred it as an excuse for not paying. These covenants were dependent. 1 *H. Black.* 270; 5 *Wend.* 496; 11 *Wend.* 67. The plaintiff having averred performance, was bound to prove it. 2 *Watts* 305; 6 *Binn.* 159; 2 *Yeates* 339.

On the evidence, it appeared that the firm was solvent. But it is sufficient for us that it was not shown to be insolvent. The appraisement of the list of debts due by the firm was unauthorized and not admissible in evidence. The persons to be appointed were to value and appraise only the debts "belonging to the firm." And there are mistakes in omitting to charge the defendant with Ellmaker's debt, that being intended to be inserted, and afterwards recovered, and in charging the defendant with $1000, the money put in by the plaintiff. That ought not to have been brought in to make the firm insolvent, nor was it to be appraised.

The defendant never agreed that the firm should appear to be solvent. That was to be the subject of "further sufficient security," and was not included in his undertaking.

If the defendant was liable as a guarantor, he was not responsible till Delaway was insolvent or sued. 16 *Serg. & Rawle* 74.

*I. Norris, contra.* Debts due by the firm were to be examined and valued. Everything was to be valued to determine whether the firm was solvent, otherwise the agreement cannot be carried out. At any rate the defendant is now precluded from this objection, as he brought the books to the appraisers and urged them to settle everything.

The covenant is independent. A covenant that goes only to

[Wright v. Smyth.]

part of the consideration is a distinct and independent covenant. 6 *T. R.* 570; 4 *Bing.* 409; *Platt on Cov.* 90. If the performance is unnecessarily averred, it need not be proved. 1 *Saund.* 235 ; 9 *Serg. & Rawle* 198.

As to set-off of independent covenants sounding in unliquidated damages for tort, that cannot be. 2 *Wash. C. C. R.* 456; 2 *Dall.* 237. Here there was no plea or notice of set-off or defalcation.

The opinion of the Court was delivered by

SERGEANT, J.—The argument of the plaintiff in error, reduced to its essence, amounts to this, that Delaway was not liable for the partnership estate's not appearing to be solvent, as he had covenanted it should, unless the plaintiff had forthwith settled or paid off the debts of the firm agreeably to the covenant on his part. But the argument seems to be without foundation. The two subjects are in their nature distinct and unconnected, and each may be performed independently of the other, and without reference to it. The payment of the debts cannot go to make the estate more solvent, nor is the plaintiff exempted from paying the debts because the estate may appear to be insolvent. In addition to this the covenants are separated into distinct classes and both parties required and gave security for the performance of them respectively, and may be considered as relying on that, and not on the prior or concurrent performance by the other. It is true damage may have been, and it is alleged was, sustained by Delaway in consequence of the plaintiff's failing to pay the debts of the firm : but for that Delaway had his remedy by action against the plaintiff or his security for any damage he could show he had sustained, in the same way as the plaintiff has against him. And it is not possible to say that any one of these covenants by the plaintiff, or all taken together, were vital to the defendant's performance of his undertaking, but on the contrary, each party was to perform for himself his own covenants, whether the other party made default or not. Delaway chose to stipulate and the defendant to guarantee that the estate should appear to be solvent, for reasons best known to themselves, and that without reservation or condition, and without any express or implied reference to anything to be done on the part of the plaintiff as involved in its performance. It is now settled that the dependency or independency of mutual covenants does not arise from the use of any particular phraseology, such as covenant, condition, consideration or the like, or on the collocation of words or sentences in an instrument. The nature of the transaction, and the object and design of the parties, are to be looked at, and such construction is to be given as will best effectuate their object and do justice between them. On looking at these, we agree with the court below that in this case it comports with the design of this agreement and best carries out the

[Wright v. Smyth.]

intention of the parties, to construe the covenants as distinct and independent, to be performed by each party for himself, independently of any performance by the other, and that each is liable to the other for any damage sustained by the non-performance of what either undertook to perform on his part.

2. The defendant further contends, that even if the covenants are independent he had a right to set-off or defalcate the damages he had sustained in consequence of the plaintiff's violation of his covenant to pay the debts, against the present claim. That he offered, however, to do so on the trial in the regular and accustomed manner, does not appear by the record, except that he infers it from an answer by the court to a different question. No notice of such set-off or defence was given; no evidence was adduced expressly with that view; no point was put to the court on the subject. All that can be said in regard to it is, that if the court did err it was in going out of the way to lay down a hypothetical position of its own. We have, however, no hesitation in saying that a claim of unliquidated damages accruing to the defendant merely by reason of the breach of the plaintiff's separate and individual covenant to pay the debts, is not a subject of set-off or defalcation either under our Act of Assembly or the English statutes of set-off. To do this the claim must be first reduced to some certainty by a judgment.

Another objection is, that the court erred in receiving in evidence the list of debts due by the firm, and in their charge on that point. It is true a list of debts due by a firm is not, correctly speaking, a subject of appraisement, and there may be a doubt how far the language of the contract authorized the appraisers to append such a list. But when we observe that it was in some measure a necessary item to be fixed in order to determine whether the firm was solvent, and that it appears by the parol evidence the settlement of everything was pressed on the appraisers by Delaway, and the books of the firm brought to them by him for that purpose, we think in this there was no error.

Judgment affirmed.