ELLMAKER's Executors *v.* The FRANKLIN Fire Ins. Co.

Under the plea of "covenants performed," without any notice of special matter it is not competent, under a rule of court requiring notice of the special matter intended to be proved under the general issue, to show a breach of a contract between the covenantee and a stranger, which, if performed, would have enured to the benefit of the covenantor.

Where a series of modified offers of evidence are made, and several objections to each are taken, and but one exception sealed to the rejection of all of them, it is sufficient, if any one of the objections is decisive against the admission of any of the offers.

The actual damage sustained by fire, with interest thereon, is the measure of damages; and a policy on an unfinished house does not cover wood-work prepared for that house and deposited in an adjoining one, which was also insured.

Parol evidence of conversations respecting the extent of an intended liability, under a guaranty, are not admissible to vary the effect of the written guaranty not delivered until a subsequent period.

The defendant executed a deed reciting that A. had borrowed $4000, on mortgage, from the plaintiffs, on condition of defendant's guaranty, and covenanted that if the premises were sold by the sheriff, he would pay any deficiency. By a parol instrument of the same date, the plaintiffs agreed that so soon as $750 should be paid them, in part satisfaction of the principal, the guaranty should be delivered up to the defendant, provided that releases of mechanics' liens on the property should first be filed in the office of the plaintiffs. On a sale by the sheriff to a purchaser for the use of the plaintiffs, before compliance by the defendant with the terms of the latter instrument, the defendant became absolutely bound to make up any deficiency in the proceeds of the sale, after the mechanics' liens are deducted, to pay the mortgage debt.(a)

IN error from the District Court of Philadelphia.

*Feb.* 22, 23—*April* 14, 15. This was an action of covenant by defendants in error on a covenant of guaranty by the testator of the plaintiffs in error.

It appeared that on the 11th September, 1834, Wm. M. Bozarth borrowed $4000 from the plaintiffs below, on a bond and mortgage on a house in Filbert street. By a deed dated the 13th September, reciting the bond and mortgage, "and that the said sum was lent to W. M. B. on condition of the guaranty of L. Ellmaker," in consideration thereof Ellmaker covenanted that in case the said messuage should be sold at sheriff's sale, under proceedings on the mortgage, or otherwise, and should not produce enough to satisfy the said debt of $4000, with interest, &c., over all prior liens, he would pay

---

(a) S. C. 6 Watts & Serg. 439, on a former writ of error.

plaintiffs so much as should be wanting to satisfy the said debt, &c.; with a further covenant that the house and lot were clear of all *claims* for the erection of the same. A parol agreement of even date, signed on behalf of the plaintiffs, was underwritten as follows:

"It is agreed that when and so soon as the sum of $750 shall be paid to the Franklin Fire Insurance Company, in part satisfaction of the principal of the above-mentioned bond, the foregoing guaranty shall be cancelled, and the paper delivered up to the aforesaid L. Ellmaker; provided that sufficient releases of the liens of mechanics and others concerned in the erecting or constructing of the said building, shall previously thereto be produced and filed in the office of the said company."

In 1835 proceedings were had on the bond, the property sold by the sheriff and purchased for the use of the plaintiffs, and the proceeds distributed. The amount received by the plaintiffs was $1447 36, the residue having been applied to the mechanics' liens, &c.

The pleas were covenants performed, and set-off. Under the latter, the defendants proved the plaintiffs' policy of insurance on two unfinished houses to Ellmaker, and gave evidence of the loss thereon by fire. By the conditions it was required that each house should be separately insured, and in like manner, a separate sum insured on the property. The only question arising on the evidence on this point, was from the proof that the wood-work for one house was "got out" and deposited in the other.

To show a fraud in holding Ellmaker liable, under the written contract, beyond the $750, the defendants called a witness, who stated that when the guaranty was brought to Ellmaker, he declined signing, thinking it was too binding on him; that Ellmaker then wrote something on a paper and handed it to the agent of the company; and afterwards said he would go as far as $750, and no further. The houses for which the money was borrowed were on lots purchased from Ellmaker on ground-rent. At a subsequent period, the witness had seen the guaranty with the addition to it, in Mr. Ellmaker's hands.

The court rejected testimony to show a contract between Wm. M. Bozarth and plaintiffs, by which he was to be permitted to make sale of the property for an amount exceeding the debt, and that while this was in force, and in violation thereof, and without notice to him, the proceedings and sheriff's sale were had; and also, in addition, that as a consideration therefor, W. M. Bozarth contracted to pay *that* and another debt he owed the company, on a mortgage

of property already sold for a less sum than was secured thereon. Also in addition thereto, a similar contract by W. Bozarth, (the father of W. M. Bozarth,) after the sheriff's sale, and before the deed was acknowledged. The court said this was irrelevant. The defendant then offered to prove, in addition to the former offers, that W. Bozarth offered his own personal responsibility for payment of the debt of W. M. Bozarth, who was insolvent. This was objected to as not admissible under the pleadings, and rejected, and a bill of exceptions sealed; no previous exception appears to have been noted on the subject of this testimony.

His honour (JONES, J.) instructed the jury, that by the terms of the agreement, Ellmaker could have discharged himself from his obligation by paying $750, and procuring releases of the liens. That the payment of the money out of the proceeds of the sheriff's sale, and the discharge of the liens thereby, was not a compliance with the agreement, as it was obviously the intention of the parties to have a security clear of liens, eased by a partial payment, and they must disregard W. M. Bozarth's testimony, as it did not relate to the time of the execution of the guaranty, since, besides other reasons, he said that afterwards he had seen it in Mr. Ellmaker's possession, and until a delivery by him, about which the witness knew nothing, it would not be a valid instrument. Mr. Ellmaker had, therefore, ample time for deliberation, after the conversation proved, before the completion of the contract, by delivery of the instrument, which, therefore, alone constituted the evidence of the contract. As to the measure of damages, that was the difference between the sums guarantied and received, for this was not in the nature of a penalty, being the exact sum which the plaintiff had a right to enforce from Bozarth, and this agreement was but a collateral guard or security. As to the set-off, the only liability of the plaintiffs was to the loss by the fire, *with interest* on that amount, and not to damages for non-payment on the day,—nor for the wood-work got out for one house, but not deposited therein.

The rejection of the evidence, and the instruction to the jury thereon; the construction of the guaranty, and the rule as to defendant's liability on the policies, were the errors assigned.

*Rawle*, for plaintiff in error.—The third objection to the evidence was on the pleadings; but this went to show a compliance with the covenants, by an acceptance of another contract in lieu of them. [BELL, J.—That is not your offer.] It was to show an equivalent to payment, *accepted*. The decision was that the agreement had no

effect on the original contract; but it is in the nature of a defeasance, and if we have performed that, it is inequitable to enforce the whole penalty; Solomon v. Wilson, 1 Whart. 241; Story's Eq., §§ 1314—1316. The true construction is, that the mortgage is to be reduced by the payment of the sum agreed upon, and the liens are to be discharged, no matter how; here we agree the plaintiffs are to receive the proceeds of the property, as if the liens never existed; that is, we pay them those amounts, and the agreed sum beside. The company, if they had repaired, would have had to procure the new wood work; they were therefore bound to supply us with the value of such materials as were destroyed.

*T. I. Wharton* and *Scott*, contrà.—If the evidence was relevant, it was not admissible under the pleadings. How could we come prepared to meet such a claim without an intimation from defendants? Suppose W. Bozarth had a cause of action; can that right affect a contract between strangers, or is it possible to say that a breach of our contract with him was a *performance* of the covenants by them? [GIBSON, C. J.—I think a court of chancery might have interfered, if they had procured an actual purchaser; but certainly it is not enough to make an offer to that effect.] If there had been a contract by us to sell, it could be enforced, and nothing was lost.

The origin of this plea of covenants performed is stated in Bender v. Fromberger, 4 Dall. 439. It was invented to save special pleading by the aid of a notice; Rangler v. Morton, 4 Watts, 265. Wright v. Smyth, reported in 4 Watts & Serg. 527, is similar to this. By the printed paper-book it appears that there was a plea of covenants performed, and one of the errors assigned was, the decision that the failure on the part of plaintiffs to comply with his contract could not be made the subject of set-off, or *de duction;* and the court agreed that it could not be. There was no plea of *set-off;* but this plea of *covenants performed* is spoken of and treated as if it were a plea of set-off, and subject to the same rules; 1 Troub. & H. Prac. 277; 2 Troub. & H. 26. As to the question on the policy, the express terms of the contract are sufficient. The cases on the admission of parol testimony are collected in Whart. Dig., tit. *Evidence*, pl. 777, *et seq.*

*Randal*, in reply.—There is no general issue in covenant, and no rule of court which refers to this plea. It has been the uniform practice, that of some of the judges of the District Court excepted, to receive the evidence without notice; Bender v. Fromberger, *ut sup.;* Neave v. Jenkins, 2 Yeates, 107; Roth v. Miller, 15 Serg. & Rawle,

105; Webster *v.* Warren, 2 Wash. C. C. R. 456; Rangler *v.* Morton, 4 Watts, 265; Christine *v.* White'll, 16 Serg. & Rawle, 114; Thomas *v.* Perry, 1 Pet. C. C. R. 49.(a)

The cause having stood over until March Term, when all the judges were present, the court directed the re-argument (by *Randal* and *Wharton*) to be confined to the construction of the contract, and refused to hear any argument on the other points of the cause.

For plaintiff in error, it was said, the rent of the ground was the fair value, and it could not be said that Ellmaker was in any manner interested in the money borrowed; he stood, therefore, in the light of a naked surety, and it was shown that he had refused to sign the original document as being too strict, which very strictness was now to be enforced. The execution was obtained on the faith of the parol instrument; it was the last and most clear expression of the meaning of the parties, as in policies of insurance the written clause is entitled to more weight than the printed. It was beside offered to be shown, what was his declared intention. The two papers, thus taken together, show as plain a design to limit the responsibility to $750 and the liens, as is possible; and this is not denied, but it is said some time was fixed at which that was to be done. But that cannot be the sheriff's sale, for until that took place the deficiency could not be ascertained, and equity relieves against penalties from lapse of time. [*Per Curiam.*—It was suggested that it was in the nature of an insurance, Ellmaker having the option of ridding himself of all liability, on the payment of a certain sum before the deficiency was ascertained. If he remained in, he took his chance as to the amount.] It would be an unreasonable construction that he was to pay so large a sum in ease of a stranger, when the property might be amply sufficient. And even supposing that he did not comply, what is the rule in equity? that he is liable for so much as he was bound to pay, and no more.

For defendants.—Ellmaker was not a surety. The money was lent on his security, and it was applied to render his ground-rent valuable. As to this contract, it is *res judicata ;* every point made here was argued and determined in 6 Watts & Serg. 439. The learned judge, in trying the cause, has followed the instructions explicitly. It is asked, what difference does the sale make? The object was investment, and had Ellmaker complied with his bargain, the com-

---

(a) During this argument, Coulter, J., was at Nisi Prius.

pany would have had a mortgage for $3250, on property clear of encumbrances, instead of $4000, on a property covered with liens. The whole instrument shows the payment was to be before the sale. It was to be by Ellmaker, but he has paid nothing; the releases were to be filed: certainly not after their discharge by operation of law. The *bond* was to be delivered up : not, certainly, after judgment and execution.

*April* 27. ROGERS, J.—In the course of the trial, the defendant offered to prove a contract between Wm. M. Bozarth and the Franklin Fire Insurance Company, by which Wm. M. Bozarth was to be permitted to make sale of the mortgaged property for an amount more than sufficient to pay the debt due by him to the company, guarantied by Ellmaker, with interest. That while this contract was in force, the company, without notice, violated the contract, and sold the property to a third person, for a sum sufficient to pay the debt and interest. This was objected to, "1. Because there was no consideration for the contract." Before any decision, the defendant, in addition, offered to prove that the consideration was that he (W. M. Bozarth) would pay the debt, interest and costs, on the bond and mortgage guarantied, in full, and that he would also pay another debt of W. M. Bozarth, (himself,) secured by mortgage, but not guarantied; both the mortgaged properties having been previously sold for a sum insufficient to pay the debt; and that W. M. Bozarth was unable to pay.

The evidence was objected to, because there was no consideration. Both the offers were overruled and exception taken.

The defendant then offered to prove a similar contract between Wm. Bozarth and the plaintiff, in his individual capacity; and further, that this contract was made after the sheriff's sale, and before the acknowledgment of the deed; and also to prove he agreed to pay a larger sum, and that they accepted the offer. This evidence was objected to for two reasons; that there was no consideration, and that it was irrelevant to the issue. It was rejected by the court because it was irrelevant, Wm. Bozarth being a stranger; that it was not to prove a contract by *W. M. Bozarth*, through the agency of his father, but the contract of *W. Bozarth*.

The counsel then offered, in addition to the former offer, that W. Bozarth offered to add his own personal responsibility for the payment of the debt due by *W. M. Bozarth* to the plaintiffs; W. M. Bozarth being at the time insolvent.

The evidence was objected to, as I understand the record, for the

reasons already mentioned, and for the further reason that it was not admissible under the pleadings, no notice having been given of the matter offered. For which of the reasons, (or all of them,) the evidence was excluded, does not distinctly appear, although I am inclined to believe it was overruled mainly because the defendant had neglected to give notice of the special matter. The record comes up in rather a confused state, but it appears to the court that the last offer was an embodiment and merger of the former, and that the same objections were made, with the addition that no notice was given. It is, therefore, fair to say that this exception applied as well to the former as to the last offer. If then the fact was as stated, and this is not denied; and notice was required by the rule of court, and the evidence possibly ruled out for that reason, the course was for the defendants to ask the court to withdraw a juror, on the ground of surprise. We consider the last offer as a virtual withdrawal of the first, and consequently, if either of the exceptions to the evidence is tenable, the court was right in excluding the evidence.

The pleas are "covenants performed with leave, &c.," and set-off. It is agreed that the evidence was not admissible under the plea of set-off; but it is strenuously contended that it ought to have been received under the first plea.

It having been the common practice to plead the general issue, with leave to give the special matter in evidence, it is ordered, by a rule of the court, that the party who proposes to take the benefit of it, shall, at least ten days before the trial, give notice in writing to the other what are the special facts or matters on which he will rely; otherwise he shall give no other evidence than what by law is admissible on a general issue plea.

It has been repeatedly held that every court is the best judge of the construction of its own rules, and that we will not undertake to reverse a judgment unless for special reasons and in a plain case.

Although this case may not come within the letter of the rule, yet it comes within its spirit; and the same reason applies as in those cases which, it is acknowledged, fall within its limits.

Although, (in Pennsylvania,) the plea of "covenants performed" is not, strictly speaking, the general issue, yet, as is truly said, in 2 Troubat & Haly's Practice, page 26, it is in the nature of the general issue.

That a notice is required in an action of covenant under the plea of "covenants performed," seems to have been ruled in Wright v. Smyth, 4 Watts & Serg. 534. The plea in that case, as appears

from the paper-book, was "covenants performed." To this plea the remarks of the judge applied.

But the evidence was not *set-off*, but an equitable defence to the action; and as such was not receivable without notice. That notice is .necessary in all cases of equitable defence, would seem to have been the opinion of Tilghman, C. J., in Robinson *v.* Eldridge, 10 Serg. & Rawle, 142; and of Duncan, J., in Geddis *v.* Hawk, 16 Serg. & Rawle, 28.   The notice of an equitable defence, as Mr. J. Duncan says, is, in fact, a bill in chancery, and operates substantially as a bill for an injunction.   To avoid injustice it would seem necessary that the opposite party should have notice of the defence, for it is impossible to answer that of which he has been studiously kept ignorant.

That notice is required, also appears from Bender *v.* Fromberger, 4 Dall. 439.   Speaking of this plea, Tilghman, C. J., says:— " This form of plea is peculiar to Pennsylvania, and is unknown in England.   It was invented to save the trouble of special pleading, and has been sanctioned by too long a practice to be now shaken. In fact, it gives the defendant every advantage which he could claim from special pleading, and saves all the labour and danger; for *upon notice* to the plaintiff without form, he may give any thing in evidence which he might have pleaded."

If the distinction contended for by the defendant be true, then it is any thing but 'an improvement in the system; and it is not too much to say, that the invention would be an unmitigated nuisance, leading, as it must necessarily do, to all manner of injustice, trick, and artifice.

The opinion of the court on this point renders it useless to express any opinion as to the other objections to the admission of the evidence, and thus disposes of the first three exceptions.

But it is said the court erred in the construction of the contract, and next in instructing the jury to disregard the testimony of William M. Bozarth.   It is more convenient to notice the last objection first.

The reasons of the court on this point, which we adopt, and which it would be useless to repeat, are perfectly satisfactory, and warrant the court in coming to the conclusion, and so instructing the jury, that there was no extraneous evidence altering the intention of the parties; that their intention must be gathered from the written contract, and that this was a question of law for the decision of the court.

The difficulty, and it is the only point on which any doubt has

been entertained, is as to the measure of damages. The plaintiffs contend that they have a right to recover the remainder of the sum of $4000, with interest, after deducting the amount received out of the proceeds of the sheriff's sale. The defendant contends that the utmost extent of the pecuniary liability of Ellmaker was $750, and that the utmost which can be recovered upon any principle of equity, is the amount of the liens which are mentioned in the under-written agreement. The court ruled the point in favour of the plaintiffs, and this is the fourth error, viz.: "that the court erred in charging the jury upon the construction of the contract of guaranty."

This case has been before in this court, and is reported in 6 Watts & Serg. 441, to which I refer for a full statement of the case. Among other matters, as appears by the report, the counsel for the defendant requested the court to charge the jury, "that at all events according to the true construction of the whole instrument, the plaintiffs can only recover the $750, with interest." But this instruction the court refused to give, whereupon the defendant assigned as error, that the court refused to charge, that the plaintiffs, under the circumstances, could recover only the sum of $750 with interest.

The Chief Justice, who delivered the opinion, after having shown that the two instruments, being executed at one and the same time, were to be considered as one instrument, goes on to speak of its effect in relation to the very point in dispute. I say this, because his remarks in relation to any other point in the cause would be irrelevant and senseless; a fault which can never with justice be attributed to that learned judge. "It's effect, as such, however, was not what the guarantor attempted to assign it. It was a defeasance, but the condition of it had not been performed; the mechanics' liens had indeed been extinguished, but not by Bozarth, the debtor, as was contemplated, or by the defendant his surety. They were to be discharged in ease of the mortgage, instead of which they were discharged out of the proceeds of the premises sold subject to them, and in prejudice of the mortgagee, consequently, in accordance with neither the letter nor the spirit of the proviso. The plaintiffs consented to take the property alone as security for a part of the debt, provided the other part of it and the prior liens were paid by the defendant or his surety. The liens, indeed, have been paid, but how? Not by the debtor or his surety, but by the mortgaged premises at the plaintiffs' expense. The jury were properly instructed that the agreement, depending

as it did on an unperformed condition, was not an obstacle to a verdict for the plaintiffs' demand."

Unless I mistake most grossly the import of the language, the point is discussed and ruled for reasons perfectly satisfactory to my mind. It is a mistake to suppose that this is a penalty or in the nature of one. The case must depend entirely on the construction of the contract; and it was evidently the intention of the parties that Ellmaker, who, by the by received the money, and can hardly be regarded in the light of a surety, and certainly is entitled to no peculiar favour, agreed to guaranty the whole amount loaned, from which he was to be discharged only by the performance of two things, viz.: in a reasonable time, (for so I construe the agreement,) paying or causing to be paid either by himself or by the mortgagor in ease of the mortgage, the sum of $750, and procuring sufficient releases of the liens of the mechanics and others concerned in the erecting or constructing the building. It is admitted, that this was to be done by either Ellmaker or Bozarth. How then can he be relieved from his contract and guaranty extending to the whole amount loaned, without paying one dollar nor taking any steps to extinguish the liens? He had his choice, either to do one or the other, and he chose, for reasons satisfactory to himself, to take the chances of a sale. And this view derives force from the fact that the guaranty was to be cancelled, and the paper delivered up upon his performing his agreement, a stipulation which would be absurd, if the defendant's construction of the contract is true. There is, to my mind, but little difficulty in understanding the intention of the parties. The company was unwilling to lend so large a sum on the security of the property merely, and particularly as there were unascertained mechanics' liens existing against it. But they were willing to advance $4000, less $750, on the security of the mortgaged premises, provided the liens were extinguished or releases procured. Hence, they required Ellmaker to stipulate to pay that sum and extinguish the liens, that they might have the mortgage divested of all prior liens whatever on the property. And this is more probable, because many persons are unwilling to advance money on mortgage when any prior mortgage or lien exists against the property, and for the very plain and obvious reason, that if compelled to sell the property in payment of the debt, they may be obliged to advance a further sum in payment of the prior liens for the purpose of securing the debt. This is not always convenient, and hence it is that a first mortgage is preferred to a second, however valuable the property mortgaged may be.

We see no error in instructing the jury not to give damages for materials not within the houses for which they were designed. It seems to be conceded that the policy extends to work got out for each house but not put up, provided the work was deposited in the house for which it was designed, and remained there during the fire. This is a liberal construction of the policy, and certainly is extending it as far as the assured can reasonably desire. If the assured could recover for the loss of the work designed in this case for the fourth house if it were deposited in the third, there would be nothing to prevent a recovery if deposited in any other house or any other place, however remote from the building consumed; there is no limit: but this it is obvious could not be intended, as it would put the insurers in the power of the insured. The price of insurances depends in some measure on the situation of the property insured, and they might not be willing to insure at all, if they were to be answerable both there and for the materials intended for the house insured which were at another place.

The court was right in instructing the jury not to give consequential damages.

In estimating the damages, the jury were to be regulated by the extent of the loss *by fire*. The only loss or danger within the policy, is that which happens by fire. This, the company bound themselves to make good by paying it, or by restoring the property within a specified time to as good condition as it was in before the fire. If the plaintiff neglected to repair or to pay the sum to make good the loss, the only compensation to which the defendant is entitled, is to recover interest on the amount of the loss. And so the court instructed the jury, in which we see nothing amiss.                                        Judgment affirmed.