## Lanigan, to use of Stichter, *versus* Kille.

1. Where a lessee is evicted during his term by the holder of a paramount title, without fraud on the part of the lessor, his measure of damages against the lessor, under the implied covenant for quiet enjoyment arising from the words "demise and let," is the consideration paid by him. If he has paid only the rent, during the time of his possession, he is entitled to only nominal damages.

2. In such case, the lessee is not entitled to recover the value of improvements for the prosecution of the business, some of which were erected in pursuance of a covenant made by him to that effect in the lease, and all of which he had, by the terms of the lease, the right to take down and remove at the end of the term.

3. In such case, the fact that the lessor, in an action against him by the paramount owner for mesne profits, had set off and received credit for the value of the improvements affixed to the freehold, is immaterial.

4. K. leased to L., for fifteen years, in consideration of a royalty, certain ore lands, L. covenanting to erect forthwith good and approved machinery to take out the ore, and K. covenanting that the lessee should have full privilege to erect all buildings necessary to working the ore, and that at the end of the term, he should have the right to take down and remove all buildings put up by him. The lease contained the usual words, "demise and let," but no express covenant for title or quiet enjoyment. L. was subsequently evicted in an ejectment suit against K., founded on a paramount title. In an action by L. against K. to recover damages for the eviction: *Held* (affirming the judgment of the court below), that the measure of damages was the consideration paid, and that the damages in this case, therefore, could only be nominal.

5. The plaintiff offered to show the value of machinery erected by him and standing at the time of eviction, as a portion of the damages he was entitled to; and in order to fix the value thereof, offered to show that, in an action for mesne profits brought against the defendant, he had fixed the value of said improvements at $9600, and reduced the verdict by that amount. *Held* (affirming the ruling of the court below), that the evidence was inadmissible.

January 24th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 2, of *Philadelphia county:* Of January Term 1880, No. 28.

[Lanigan v. Kille.]

Covenant, by James Lanigan to the use of Henry P. Stichter, against John T. Kille. The facts were as follows: By indenture of lease, dated August 1st 1871, the defendant did "demise and let unto the said lessee (the plaintiff Lanigan), the sole and exclusive right and privilege of mining and taking out the iron ore from a certain tract of land situate in Dickinson township, Cumberland county, Pennsylvania, * * * for the term of fifteen years, at the rental or royalty of fifty cents per ton" for each ton mined from the said tract. The lease contained, inter alia, the following covenants: "The said lessee hereby covenants and agrees to and with the said lessor, that he will forthwith procure and set up good and approved machinery to take out and work said ore, and that he will work and mine the same in a good, workmanlike manner, and as an open bank, and that he will mine and take away not less than four thousand tons of ore in each and every year during the term of this agreement."

"The said lessor covenants and agrees to and with the said lessee that he shall have the full privilege of building houses and erecting all necessary machinery for developing, working and taking out the ore upon said tract, and that, at the expiration of the hereby demised term, or in case ore shall not be found in sufficient quantity upon the said tract, he shall have the right to take down and remove all buildings and machinery so put up or erected."

The lease contained no express covenant for title or quiet enjoyment. The plaintiff went into possession, put up valuable improvements and mined a large quantity of ore, on which he paid the royalty as agreed on. Within four years of his taking possession, an action of ejectment was brought against Kille, the lessor, upon a paramount title (see Kille v. Ege, 29 P. F. Smith 15), in which judgment was recovered; and the lessee was on October 26th 1874, deprived of his possession under a writ of habere facias possessionem. (See Ege v. Kille, 3 Norris 339.) Lanigan, on November 14th 1874, assigned his interest in the lease to Henry P. Stichter. Subsequently, in an action for the mesne profits, brought by the successful parties in the said ejectment against Kille, the latter set off against said claim the value of the said improvements, erected by Lanigan, amounting to the sum of $9600, and received credit therefor. (See Kille v. Ege, 1 Norris 102.)

The plaintiff thereupon brought this suit, averring in his narr., the above facts, the performance of his covenants, the loss of his term and improvements, and claimed to recover compensatory damages therefor, arising from the breach of the implied covenant for quiet enjoyment.

On the trial, before MITCHELL, J., the defendant admitted the eviction. The plaintiff offered to prove: (1.) The value of the improvements affixed to the freehold erected by the plaintiff upon

the land, under his lease from the defendant, at the time of the eviction. Objected to, as irrelevant; objection sustained; exception. (First assignment of error.) (2.) That the defendant, in the said action against him for mesne profits, fixed the value of said improvements at the sum of $9600, and was allowed the same as a set-off. Objected to; objection sustained; exception. (Second assignment of error.)

There was no other evidence, and the court instructed the jury to find for plaintiff nominal damages of $6. Exception. (Third assignment of error.)

Verdict accordingly for plaintiff, for $6. A rule for a new trial having been discharged, judgment was entered on the verdict. The plaintiff took this writ of error, assigning for error the exclusion of his offers of evidence, and the instruction of the court to the jury to find a nominal verdict for the plaintiff.

*S. E. Cavin* and *F. Carroll Brewster* (with whom was *Francis E. Brewster*), for the plaintiff in error.—Two questions arise in this case, viz. : what is the effect of the implied covenant for quiet enjoyment under the words " demise and let;" and what is the measure of damages for its breach. (1.) The implied covenant is general and unlimited, extending to the acts of parties holding a paramount title, unless expressly restricted to the acts of the lessor. It extends to the entire term, without regard to the real title of the lessor. The leasehold is a chattel interest, not real estate, and the principal right of the tenant under the implied covenant, is the quiet enjoyment of the possession of the real estate during the term, or indemnity if evicted: Noke's Case, 4 Rep. 80 *b ;* Spencer's Case, 5 Rep. 17 *a ;* Merrill *v.* Frame, 4 Taunt. 329; Line *v.* Stephenson, 5 Bing. N. C. 183 (35 Eng. Com. Law Rep. 106); Smith's Landlord and Tenant 262, 263; Rawle on Covenants for Title, 4th ed., 464, 468 ; Hemphill *v.* Eckfeldt, 5 Whart. 278 ; Maule *v.* Ashmead, 8 Harris 482 ; Schuylkill and Dauphin Imp. and Railroad Co. *v.* Schmole, 7 P. F. Smith 271, 273; Williams on Real Property 397.

(2.) The rule of damages should be the same in this as in other cases of contracts relating to personal property, the amount of loss sustained by breach of the contract. The covenant of the lessee to erect improvements, is part of the consideration of the lease; and upon breach of the landlord's reciprocal covenant for quiet enjoyment, the value of such improvements should be included in the lessee's measure of damages. Especially should this be so in this case, where the landlord appropriated the lessee's property to pay mesne profits due by him. The rule of damages, in the case of breach of an agreement to sell real estate, by reason of the vendor being incapable of making a good title, viz. : that the purchaser is not entitled to recover damages for the loss of his bargain,

[Lanigan v. Kille.]

but only the amount of the deposit paid, has never been applied in Pennsylvania to the case of leases. On the contrary, the rule here contended for, is supported both by reason and authority. In the case of a sale of real estate, the rule *caveat emptor* applies; the purchaser of the equitable title is not bound to improve, if he does, it is at his own risk, and he can stop at any moment on receiving notice of an outstanding title.

In the case of a lease, *caveat emptor* does not apply; the lessee has nothing to do with title; he depends upon his contract for possession; and, having contracted to improve, he is bound to perform his covenant, no matter what danger shall threaten his landlord's title. In the case of vendor and vendee, it would be inequitable to hold the former accountable for expenditures which he did not authorize and could not foresee; but in the case of an improvement lease, the improvements being stipulated for as an inducement to the contract, the lessor should be held to indemnify the lessee for all damages suffered by reason of the lessor's failure to assure quiet enjoyment. The lessee has a still stronger equity, where, as in this case, the improvements by the terms of the contract were to be removed by him at the end of the term, but the lessor, during the term, has appropriated them to his beneficial use.

The cases relied upon by the other side, viz.: Bender v. Fromberger, 4 Dallas 436; Flureau v. Thornhill, 2 Wm. Black. 1078; Bain v. Fothergill, Law Rep., 7 Eng. & Ir. App. 158, and other English authorities, were cases between vendor and vendee. No case in Pennsylvania applies the same rule to leases, but several authorities in Pennsylvania, in Massachusetts and in other states, rule, that the measure of damages is the amount of the loss sustained at the time of the eviction.

Our damages should be, therefore, the value of the unexpired portion of the term including the use of the improvements, less the rent, and plus the value of the right to remove the improvements at the end of the term, or to sell them in place: Hemphill v. Eckfeldt, 5 Whart. 278; Maule v. Ashmead, 8 Harris 482; Schuylkill and Dauphin Imp. and Railroad Co. v. Schmoele, 7 P. F. Smith 271; Kille v. Ege, 1 Norris 102; Mack v. Patchin, 42 N. Y. 175; Rawle on Covenants for Title 251; Sedgwick on Measure of Damages 169, 180; Taylor on Landlord and Tenant 240; Mayne on Damages 107; Dexter v. Manly, 4 Cush. 14.

*A. Sydney Biddle* and *George W. Biddle*, for the defendant in error.—The implied covenant for quiet enjoyment contained in the words, "demise and let," is a covenant in law, which, in distinction from an express covenant, binds the covenantor only during the existence of his own estate: McClowry v. Croghan, 1 Grant 311; Comyn's Dig., title *Covenant;* Rawle on Covenants for Title, 4th ed. 469. As the lessor here never had any estate, by reason

[Lanigan *v.* Kille.]

of the outstanding paramount title, the implied covenant for quiet enjoyment, has never been broken.  The defendant was, therefore, entitled to a verdict.  But, if we are wrong in this, the plaintiff was only entitled to nominal damages, the stoppage of rent being an equivalent for the loss of possession.

The rule of the measure of damages for eviction by paramount title, which applies to. cases of vendor and vendee, applies equally to cases of lease.  The rule of *caveat emptor* applies to leases as well as to sales, although in ordinary short leases, it is neglected, because immaterial.  A lessee is a purchaser *pro tanto:* 2 Sugden's Vendors and Purchasers, 10th ed., 140, 141, 148; Keech *v.* Hall, Douglass' Rep. 21; Waring *v.* Mackreth, Forrest Rep. 129; White *v.* Foljambe, 11 Vesey, Jr. 343; Purvis *v.* Rayer, 9 Price 488.  The cases cited by Mr. Rawle (Cov. for Tit. 251–255), relied upon by the other side to sustain a supposed exception, were cases of express covenants, and do not apply to an implied covenant for quiet enjoyment.

The argument, that the lessor exacted a covenant from the lessee to erect improvements, and when the paramount title succeeded, the lessor availed himself of the lessee's improvements, so erected, as a set-off against mesne profits, and now refuses to compensate the lessee therefor—is plausible but fallacious.  The lessee's covenant to put up machinery was only to enable him to pay rent, and as a security to the lessor; if he had not put up the machinery, but had paid the rent, the lessor could have recovered only nominal damages for the breach of the covenant to improve.  True, the lessee had the right to " take down and remove" the improvements at the end of the term, but, he claims their value affixed to the freehold, which is infinitely larger than would be the value of the removed debris.  In the absence of fraud by the lessor, the lessee's damages are to be measured, not by what the lessor received credit for by way of set-off against the paramount owner, but by what the lessee's loss was, if any, at the time of the eviction.  As he had paid no rent in advance, and as he enjoyed the possession with the improvements for a period commensurate with that of the payment of rent, his damages were only nominal: Bender *v.* Fromberger, 4 Dallas 442; Flureau *v.* Thornhill, 2 Wm. Blackstone 1078; Rawle on Covenants for Title 235, *et seq.;* Bain *v.* Fothergill, Law Rep., 7 Eng. & Ir. App. 158; 4 Kent Com. *474; Statts *v.* Ten Eyck, 3 Caines N. Y. Rep. 111; Pitcher *v.* Livingston, 4 Johns 1.  See also opinion of MITCHELL, J., on rule for new trial in this case: 7 W. N. C. 294.

Mr. Justice PAXSON delivered the opinion of the court, February 21st 1881.

This was an action of covenant brought by the lessee of certain ore lands in Cumberland county, against the lessor, to recover damages for an eviction from the demised premises. · The lease

was for the term of fifteen years, and some time prior to its expiration the lessee was evicted under ejectment proceedings upon a paramount title.

It is settled by abundant authority that the word *concessi* or *demisi* in a lease implies a covenant for quiet enjoyment during the term. It is sufficient to refer to Hemphill *v.* Eckfeldt, 5 Wharton 274; Maule *v.* Ashmead, 8 Harris 482; Schuylkill and Dauphin Improvement and Railroad Company *v.* Schmoele, 7 P. F. Smith 271; Nokes's Case, 4 Rep. 80 *b;* Line *v.* Stephenson, 35 E. C. L. R. 106; Smith's Landlord and Tenant 263; Rawle's Covenants for Title 464.

So much is conceded. Nor is it denied that, for a breach of the covenant implied from the use of the word *let* or *demise*, an action can be maintained. The only contention is, as to the proper measure of damages. The plaintiff offered to prove in the court below (see first specification), the value of the improvements which he had erected upon the demised premises, as a means of ascertaining the damages which he had sustained by reason of the eviction. The court below ruled out the offer, and instructed the jury to find nominal damages only.

The eviction here, as before stated, was by a paramount title. It is not the case of an eviction by a landlord. in disaffirmance of his own act, or by a fraud perpetrated upon the tenant. It is important to bear this distinction in mind, as the measure of damages is different in the two classes of cases.

It may be conceded to be settled law in England that the measure of damages for the breach of an express covenant for quiet enjoyment is the value of the property at the time of the eviction; Williams *v.* Burrell, 50 E. C. L. R. 401; Lock *v.* Furze, 115 Id. 94; Rolph *v.* Crouch, L. R., 3 Exch. 44. These cases hold that the rule in Flureau *v.* Thornhill, 2 W. Black. 1078, that, where a contract of sale of real estate goes off in consequence of a defect in the vendor's title, the vendee is not entitled to damages for the loss of the bargain, does not apply to the case of a lease granted by one who has no title to grant it.

In this state it is settled that, as between vendor and vendee, the measure of damages is the consideration paid. Bender *v.* Fromberger, 4 Dallas 441, which expressly ruled the point, has never been questioned, but, on the contrary, has been followed in a number of later cases, which it is needless to cite. While the contrary doctrine has been asserted in a few of the states, the principle of Bender *v.* Fromberger has been recognised in a large majority of them, and by the Supreme Court of the United States. The cases will be found collected by Mr. Rawle in his Covenants for Title, p. 235.

The question which immediately concerns us is whether the same rule applies as between lessor and lessee. In England, as we have

seen, it does not, and the measure of damages is the value of the property at the time of the eviction.    Upon this point the authorities are meagre, and by no means uniform.    The true rule, however, would appear to be, that in an action by a lessee against his lessor for an eviction by a paramount title, the measure of damages is the consideration paid, and such mesne profits as he has paid or may be liable for.    The consideration for a lease is usually the rent reserved.    If the tenant has enjoyed the possession of the demised premises, he has had the precise equivalent for the rent; if he has paid the rent in advance, he is entitled to recover it back in the form of damages for the eviction.    This is substantially the rule laid down in Mack *v.* Patchin, 42 N. Y. 167, where it was said by EARL, C. J. : " In an action by the lessee against the lessor for breach of covenant for quiet enjoyment, the lessee can ordinarily recover only such rent as he has advanced, and such mesne profits as he is liable to pay over; and in cases where the lessor is sued for a breach of contract to give a lease or to give possession, ordinarily the lessee can recover only nominal damages and some incidental expenses, but nothing for the value of his lease.    These rules, however much they may be criticised, must be regarded as settled in this state."    The learned chief justice then proceeds to say, that, "at an early day, in England and in this country, certain cases were declared to be exceptions to these rules, or, more properly speaking, not to be within them : as, if the vendor is guilty of fraud; or can convey, but will not, either from perverseness or to secure a better bargain ; or if he has covenanted to convey when he knew he had no authority to contract to convey; or where it is in his power to remedy a defect in the title and he refuses or neglects to do so; or when he refuses to incur expenses which would enable him to fulfil his contract; in all these cases, the vendor or lessor is liable to the vendee or lessee for the loss of the bargain, under rules analogous to those applied in the sale of personal property."    Mack *v.* Patchin came within the exceptions noted above.    The tenant in that case was evicted under proceedings to foreclose a mortgage upon the demised premises, which mortgage antedated the lease.    The foreclosure was evidently procured by the lessor.    The collusion of the latter appears in the report of the facts of the case, in the opinion of the court, and is specially referred to in the concurring opinion of Mr. Justice SMITH, who said, " the plaintiff (tenant) was clearly evicted from the premises by the act, procurement and fault of the defendant (lessor).    He expedited, if he did not instigate, the foreclosure of the mortgage under which the eviction was had.    He became a joint purchaser, on the mortgage sale, of the demised premises, and a joint petitioner with Dorsheimer for the writ of assistance under which the plaintiff was evicted from the premises."    Under these circumstances, it is not surprising that the court permitted

the lessee to recover, not nominal damages merely, but the value of the lease, less the rent stipulated to be paid.

The case in hand does not come within either of the exceptions noted. Neither fraud nor bad faith was imputed to the lessor. He demised the premises under the belief that he had a good title. The lessee leased the premises under a similar belief; both were mistaken. The lessor loses what he paid for the property, unless he is protected by apt covenants in his title, and is liable to his lessee to the extent of the consideration paid by the latter. Is he liable beyond this? The lessee contends, that he is also responsible for the improvements made by said lessee upon the property.

The liability of a lessor under the implied covenant for quiet enjoyment, for improvements made upon the demised premises by the lessee, may depend upon circumstances. A tenant, who, upon his own motion and for his own purposes, erects a building or other improvement upon a leasehold, certainly cannot recover the value thereof from the lessor in event of an eviction. In such case, the rule of *caveat emptor* would apply. It was his own folly to build upon another's land. It was contended that the case in hand does not come within such rule, however, for the reason that the lessee covenanted with the lessor to erect the improvements in question. The lease does contain such a covenant, as to a portion of the improvements. It provides, that the lessee shall "forthwith procure and set up good and approved machinery, to take out and work said ore," and the lessor "covenants and agrees, to and with the said lessee, that he shall have the full privilege of building houses and erecting all necessary machinery for developing, working and taking out the ore upon the said tract; and that at the expiration of the hereby demised term, or in case the ore shall not be found in sufficient quantity upon the said tract, he shall have the right to take down and remove all buildings and machinery so put up or erected."

So far as the improvements which were put up by permission merely of the lessor are concerned there can be no question. There was no obligation to put them up, and there can be no recovery. But it is said, that as to the machinery, there was a covenant to erect it, and therefore the lessee may recover its value in this proceeding. It will be observed that in no event was it to become the property of the lessor. The lessee was expressly authorized to remove it at the close of his term, or sooner, if ore shall not be found in sufficient quantity upon the tract. We are, therefore, unembarrassed with the question that would arise had the covenant required the improvements to be left upon the premises at the expiration of the term. The improvements were primarily for the use and benefit of the lessee in his business. He leased the premises for the purpose of mining iron ore. This necessarily involved the use of the machinery and appliances usual in such

[Lanigan *v.* Kille.]

business.  Without them, the tenant could not possibly have made the rent which he had covenanted to pay.  The lessee having covenanted to mine the ore, the covenant to erect the necessary machinery added nothing to its strength, for the reason that such erection was an essential incident of such mining.  He might as well have covenanted to put on the mules, carts, picks and tools ordinarily used in mining.  The lessor had neither title nor interest in the machinery.  He could not be said to have derived any benefit from it, except incidentally, as it enabled the lessee to pay the rent.  The most that can be said is that it increased the lessor's security for his rent.  The payment of the rent upon the days and times stipulated would have been so far an answer to a suit by the lessor against the lessee for a breach of the covenant of the latter to erect the machinery, that nominal damages only could have been recovered.  If, then, the machinery was the property of the lessee, was erected for his own convenience in the prosecution of his business, it cannot be said to have been a part of the consideration paid for the lease.  Not any more than in the ordinary case of landlord and tenant, when the latter for his own convenience and without a covenant erects a building or puts up machinery for the purposes of trade.  In either case, the lessor has increased security for his rent, to the exact amount that property of this description is placed upon the premises.

There was evidently a mutual mistake in regard to the title. Why should the lessee throw the consequences of that mistake wholly upon the lessor?  He was neither deceived nor misled by the latter.  He probably examined the lessor's title, at least he might have done so, and the omission of such examination would be negligence under the circumstances.  While it may be and doubtless is true, that in ordinary short leases, an examination of title is neither usual nor necessary, the same cannot be said in regard to leases of valuable ore-lands, having fifteen years to run, and when from the necessities of the business costly improvements are required.  The lessee of a small tenement has little occasion to concern himself about the title.  If he is evicted, the rent ceases, and that is the end of it.  But in leases of the character of the one we are considering, title is of such supreme importance, that no one but a very careless man would ever think of renting without a careful examination.  However careless a man may be as to title in ordinary leases, it is well to understand that, when a lessee seeks to improve demised premises, the rule of *caveat emptor* applies, and he would do well to see that his lessor has title.  And if not satisfied therewith, he may further protect himself by apt words in an express covenant.

There is no case in this state which is in conflict with this view. Hemphill *v.* Eckfeldt, 5 Whart. 274, is not in point.  The question of the measure of damages in an implied covenant for quiet enjoyment

[Lanigan v. Kille.]

was not before the court. In Maule v. Ashmead, 8 Harris 482, the eviction was not by title paramount, but by the act of the lessor, and comes within the exceptions noted in Mack v. Patchin, *supra*. In Schuylkill and Dauphin Railroad Co. v. Schmoele, 7 P. F. Smith 271, the measure of damages was not even adverted to. Kille v. Ege, 1 Norris 102, was an action for mesne profits, and raised no such question as the one we are considering. McClowry v. Croghan's Adm'rs, 1 Grant 307, is an authority the other way. That was an action to recover damages for the breach of a contract to renew a lease, and it was held the plaintiff could not recover for the loss of his bargain; that the value of the contract was not the measure of damages for its breach.

We are of opinion the court below committed no error in excluding the offer to show the value of the improvements referred to in the first specification.

The second specification alleges that the court erred in excluding plaintiff's offer to prove " that the defendant, in an action against him for mesne profits, by the claimant in the ejectment suit, fixed the value of said improvements at the sum of $9600, and used the same as a set-off to the claim for mesne profits and was allowed for the same." There was no error in rejecting this offer. Under no circumstances, as we view the case, would such evidence have been admissible. If we concede the right of the plaintiff to recover more than nominal damages, it is manifest he could only claim the value of the machinery after its removal, whereas the offer is to show its value in place. It is not to the purpose that years afterwards, the defendant, in an action against him for the mesne profits, succeeded in reducing the damages by showing that the value of the property was enhanced by the improvements. He would have had the same right, had they been placed there by a stranger or even by a trespasser. His defence in that suit was that the plaintiff had gotten back his property increased in value; he was not using Lanigan's property, nor his own as a set-off, but merely reducing the plaintiff's claim to what *ex æquo et bono* he was entitled to recover. Had the suit been against Lanigan for the mesne profits, he could in like manner have set up the value of the improvements as a defence *pro tanto*. Had there been a verdict against him, I have no doubt, under all the authorities, he could have recovered it back in this proceeding as a part of his damages for the eviction. But he would have been limited to the amount of the verdict, not the verdict plus the improvements by which its amount had been reduced. As, however, the action for the mesne profits was against Kille, Mr. Lanigan has no further concern in that matter, and it is referred to only by way of illustration.

The third specification has been sufficiently answered by what has been already said.

The judgment is affirmed.