AMERICAN ICE CO. v. POCONO SPRING WATER ICE CO. et al.

(Circuit Court, E. D. Pennsylvania. December 10, 1908.)

1. CORPORATIONS (§ 619*) — DISSOLUTION—OFFICERS AS TRUSTEES FOR DIVISION OF ASSETS—PENNSYLVANIA STATUTE.

Act Pa. May 21, 1881 (P. L. 30), provides that trading corporations whose charters expire may bring suits and maintain and defend suits already brought for the protection of their property and the collection of debts, and sell, convey, and dispose of their property, and make title therefor, as fully and effectually as if their charters had not expired, and that the officers last elected, or the survivors of them, shall be officers to represent said corporations for such purposes: "Provided that this act shall be construed only so as to enable said corporations to realize and divide their assets and wind up their affairs and not to transact new business." *Held,* that, where the existence of a corporation had come to an end either because its charter had terminated by limitation or because of a sheriff's sale of all of its property and corporate franchises, its officers last elected became trustees to distribute its assets, and that they had no power to prefer one general creditor over another, and, in case they did so, were liable for an accounting as individuals to a creditor so discriminated against.

[Ed. Note—For other cases, see Corporations, Cent. Dig. §§ 2459, 2460; Dec. Dig. § 619.*]

2. CORPORATIONS (§ 619*) — DISSOLUTION — SUIT BY CREDITOR AFTER DISSOLUTION.

As such statute does not authorize a dissolved corporation to be sued, but only to "bring suits and maintain and defend suits already brought," a creditor, although his claim is unliquidated, may from the necessity of the case maintain a suit in equity against the officers to require an accounting from them as trustees, and the court having jurisdiction to distribute the fund has power to liquidate his claim and to determine the right of all claimants to share in the fund

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2459, 2460; Dec. Dig. § 619.*]

3. LANDLORD AND TENANT (§ 180*)—EVICTION—ACTION FOR DAMAGES BY TENANT—FAILURE OF CONSIDERATION.

A lessee who assumed and performed a contract made by the lessor as a part consideration for a lease for a term of years, on his eviction, after a part of the term has expired. is entitled to recover for failure of consideration on account of such performance only in proportion to the unexpired term of the lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 723; Dec. Dig. § 180.*]

4. LANDLORD AND TENANT (§ 180*) — EVICTION — DAMAGES RECOVERABLE BY TENANT—VALUE OF IMPROVEMENTS.

Under the law of Pennsylvania by which a lessee on his eviction can recover the value of improvements made on the demised premises only where the eviction was through the wrongful act of the lessor, where the lessor is a corporation it cannot be charged with liability for such improvements because the eviction was brought about by the fraud of its officers committed for their individual benefit and not that of the corporation.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 725; Dec. Dig. § 180.*]

In Equity.    On final hearing.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Frank R. Savidge, Henry R. Edmunds, and John G. Johnson, for complainant.

Ira Jewell Williams, Aaron Goldsmith, Francis Shunk Brown, and Alex. Simpson, Jr., for defendants.

J. B. McPHERSON, District Judge. The Pocono Spring Water Ice Company (hereinafter called the Pocono Company) was a trading corporation duly chartered in 1895 by the state of Pennsylvania for the purpose, inter alia, of "cutting, storing and selling ice" in the county of Monroe. In April, 1903, its real and personal property and its corporate franchises were sold at sheriff's sale for the sum of $50,250. The sale was held under process issued upon a first mortgage belonging to Chester Fulmer, administrator, to whom about $29,000 of the purchase price was awarded. Out of the balance a further sum was paid to Van Orden Bros., a judgment creditor who had obtained a lien on the fund in the sheriff's hands, and the rest of the purchase money was applied to the payment of three general creditors of the company—the First National Bank of Easton, the First National Bank of Bangor, and the estate of T. T. Miller. These creditors had no lien, and the money was applied to their debts by the direction or with the consent of the defendants, Chester Snyder, the last elected president of the company, Frank C. Miller, its treasurer, and Robert J. Richards, its secretary. Richards was not a defendant originally, but was added by stipulation "as though he were expressly named as a defendant in the bill already filed." The American Ice Company (hereinafter called the ice company), which claims to be a creditor also, received no part of the fund, and has filed this bill, asking as the principal relief "that an account be stated by the said Chester Snyder and Frank C. Miller (and Robert J. Richards) under the direction of your honorable court of the surplus of $22,000, which remained after payment of the execution of the said Chester Fulmer, administrator, etc., as well as of all other estate, effects, and assets of the Pocono Spring Water Company." The object of the proceeding is to compel the defendants to pay a proportionate share of the fund that was originally distributed among the three creditors just named.

The bill is founded upon the Pennsylvania act of May 21, 1881 (P. L. 30), which provides as follows:

"That all corporations for mining, manufacturing or trading purposes, whether created by general or special acts of assembly, whose charters may have expired, or may hereafter expire, may bring suits, and maintain and defend suits already brought, for the protection and possession of their property, and the collection of debts and obligations owing to, or by, them, and sell, convey and dispose of their property, and make title therefor, as fully and effectually as if their charters had not expired; and the officers last elected, or the survivors of them, shall be officers to represent said corporations for such purposes, and if no officers survive, the stockholders may elect officers under their by-laws: Provided, that this act shall be construed only so as to enable said corporations to realize and divide their assets, and wind up their affairs, and not to transact new business."

That this statute applies to such a case as is now presented, where the charter of the company has not expired by limitation, but where the corporate existence has been brought to an end by sheriff's sale, was

decided by the Supreme Court of Pennsylvania in another suit between the Pocono Company and the ice company, reported in 214 Pa., at page 640, 64 Atl., at page 398. After deciding that the Pocono Company was a trading corporation, and was therefore within the scope of the act, the court used the following language in dealing with the objection that the statute did not apply because the charter of the company had not "expired":

"It is equally apparent, we think, that the act was intended to apply to all trading corporations whose business had ceased or terminated for any cause whatever, and was not confined to corporations whose charters had expired by express limitation. Why, it may be asked, should the Legislature have enacted a remedy for the stockholders and creditors of a trading corporation whose charter had expired by limitation, and not of a corporation whose charter rights had been extinguished by any other means? The evil was the same in both cases. So far as such interested parties are concerned, the effect was the same whether the corporation had expired by limitation or its property and franchises had been sold under execution. If this statute is not operative in the latter class of cases, the large sum due the plaintiff corporation, involved in this suit, and any other claims it may have against solvent parties, will be retained by the debtors, whereas they could have been collected if the plaintiff corporation had been dissolved by the expiration of its charter. The necessity and reason for the protection of the stockholders and creditors are the same in both cases, of which the Legislature was duly aware. The manifest purpose of the act was to afford a remedy in all cases, supposed not to exist at common law, where the life of a trading corporation expired or came to an end by any means whatever, in order that the parties interested might avail themselves of its assets. The statute is remedial, and therefore is to be extended to cases in equal mischief."

But the Supreme Court of Pennsylvania had no occasion to pass upon the questions presented by the bill now under consideration, and they must therefore be resolved without the aid of any opinion from that tribunal. And first, what duties are imposed by the act of 1881 upon the officers of a corporation whose charter came to an end? The answer is plainly written in the statute. Suits may be brought to protect or to gain possession of the corporate property, or to collect debts and obligations owing to the corporation by other persons; and, if suits have been already brought against the corporation, these may be maintained and defended. The officers may also sell, dispose of, and convey the corporate property as fully and effectually as the corporation itself might have done; but this and every other power given by the act have the single purpose in view of enabling the officers to realize the assets in order to divide them among the persons entitled thereto, and thus to wind up the corporate affairs. In a word, the officers are trustees with limited and definite powers, and these powers are to be exercised for the specific purpose of realizing the corporate assets and making distribution among creditors and (contingently) stockholders. The officers of the Pocono Company had few duties to perform. All the real and personal property of the corporation, and its franchises as well, had been converted into money by the sheriff's sale, and there was only one suit that needed attention, namely, an action against the ice company, the case reported on appeal in 214 Pa. 640, 64 Atl. 398. This resulted in a judgment (which was duly paid) of about $14,000 in favor of the Pocono Company.

Having in hand, therefore, a fund which had been produced by the

corporate assets, what were the officers to do with it? Manifestly, to divide it; the act so directs, and this would have been their duty if the statute had been silent on the subject. It is at this point that one of the principal disputes arises. If the corporation had continued to exist, it could have disposed of its assets, speaking generally, according to its will and pleasure. Certainly it could have used them to pay its debts, and in such payment it could have preferred some of its creditors to the exclusion of others. This was the undoubted right of the corporation—subject only to be interfered with by the bankruptcy law—and to this right the officers claim to have succeeded, asserting that, when they preferred the two banks and the Miller estate and excluded the complainant, they did no more than they were legally entitled to do. To the correctness of this position I am unable to assent. There is nothing in the statute that gives to the officers the power to prefer one creditor over another, and, since the act has not transferred it from the corporation to these trustees, it no longer exists. This right to prefer is personal to a debtor. It is a privilege that belongs to him as an individual, and does not survive his natural death. The executor or administrator of an insolvent estate cannot exercise it, but must divide the assets pro rata among all the creditors. This is true also of an assignee for the benefit of creditors. And the analogy should hold, I think, where a corporation has suffered a civil death, and its property has passed either actually or potentially into the hands of the law for distribution. Equity has undoubted jurisdiction of such a subject, and it will no more sanction unequal distribution among creditors of the same class than it would enter such a decree of its own motion. Unless the statute has laid down a different rule the duty of the officers was plain. That duty was to "divide," and the statute has merely emphasized the obligation. Prima facie, this means divide equally (subject, of course, to such liens as may have existed upon the property when it was converted into money), and, if the officers undertook to divide unequally, they did so at their peril. They were under no compulsion to run any risk in the distribution. Being trustees, they could have applied to a court of equity having jurisdiction either of the fund, or of the parties in interest, or of both the fund and the parties, and the decree of that court would have been a complete protection. But they could not distribute on their own motion except at their own risk, and it seems clear to me that under the facts in proof the risk has fallen out against them, and that they must account to the complainant on the basis of whatever sum may appear to be justly due. The argument that the statute has given to the officers the right to prefer among the corporate creditors, because it declares that the officers may make title to the property as fully and effectually as if the charter had not expired, does not need much attention. This provision is intended, I think, merely to remove any doubt that might arise concerning the goodness of the title that the officers were able to convey, and has no reference whatever to the distribution of the corporate property, or of its proceeds, among the creditors.

But it is argued that the claim in suit is for unliquidated damages, and therefore will not sustain a bill for an account, at least until there

has been a liquidation by proceedings at law. Whatever weight might be given to this objection under other circumstances, I do not think it can be sustained in the present suit. The situation is exceptional. The claim of the ice company cannot be liquidated at law, because no suit can be brought against the Pocono Company. It is a dissolved corporation, against which an action could not be maintained at common law, and this immunity from suit has not been removed by the Pennsylvania Legislature, for the act of 1881 only permits such a corporation to "maintain and defend suits already brought," and the present claim had not been put in litigation when the charter of the Pocono Company came to an end. From the necessity of the case, therefore, as well as upon familiar equitable principles, the court that has jurisdiction to distribute the fund must have the power to hear and determine all controversies concerning the right to share in such distribution, and this power extends to the liquidation of the claim in dispute.

The claim has several elements. It grows out of an agreement made in the fall of 1899, by which the Pocono Company leased to the ice company—

"the icehouse having a capacity of 59,000 tons and the engine house and machinery connected therewith owned by the party of the first part and situated at Naomi Pines in the county of Monroe, and state of Pennsylvania, together with the exclusive privilege of cutting, taking and harvesting ice from Lake Naomi and the free use and enjoyment of all the machinery, fixtures, implements, utensils and other personal property which are now in, upon or connected with the said icehouse and engine house; also the free use of any and all rights of way over the lands of the party of the first part, or others, to, from, around and about Lake Naomi, and to and from the said icehouse and other buildings; also, any and all lands of the said party of the first part, to be mutually agreed upon hereafter, which may be desired by the party of the second part for the construction of additional buildings, whether temporary or permanent, for the housing and storing of ice; and also any and all such lands of the party of the first part in said county of Monroe as may be required by the party of the second part for the construction, maintenance and equipment of railroad tracks, switches, turnouts and depots."

The term of the lease was 10 years from November 1, 1899, but the ice company had the option of extending it for two successive terms of three years each. The rent was $7,500 a year, with a certain royalty for ice cut, taken, and harvested. As part of the consideration also, the ice company assumed the fulfillment of a contract which the Pocono Company had made with the firm of Van Orden Bros., of Paterson, N. J. The Pocono Company agreed to keep the dam, icehouse, and other buildings on the property in good and substantial repair, and agreed further that the ice company might remove whatever additional buildings it might erect during the terms of the lease. The Pocono Company also covenanted that the ice company should have the peaceable and quiet enjoyment of the premises "without any let, suit, trouble, hindrance of or from said party of the first part, its successors or assigns, or any other person or persons whomsoever."

At the time this lease was executed, the property was incumbered of record by the Fulmer mortgage of $25,000, upon which the sheriff's sale was afterwards had in 1903. The sale, of course, divested the lease, and the ice company was obliged to surrender possession of the

premises in October of that year. By reason of this eviction, the covenant of quiet enjoyment was broken, and for the damages directly resulting therefrom the claimant is entitled to recover. This is one element of the claim, and the measure of damage therefor would be the value of the unexpired portion of the term described in the lease, and such other direct loss as may have been caused by the eviction—for example, damage to property, cost of removing machinery, etc. Another element is partial failure of consideration. As already stated, part of the consideration for the lease was an agreement by the ice company to assume the Van Orden contract. For reasons which do not appear in this litigation, the ice company did not carry out its agreement, whereupon the Van Ordens sued the Pocono Company and recovered judgment for the breach. This is the judgment that became a lien upon, and was paid out of, the proceeds of the sheriff's sale, but the Pocono Company made this loss good, for it was successful in a counter suit against the ice company, based upon the agreement to assume the Van Orden contract, and the ice company was thus compelled to fulfill that obligation. But, as this assumption by the ice company was made as a partial consideration for the whole term of the lease, and as four years of the term had been enjoyed when the eviction took place, there was no failure of consideration during these four years, and recovery can only be had now after a proper allowance for this period has been made.

The ice company claims the right also to recover for the value of the permanent improvements that were put upon the leased premises, but this item must, I think, be excluded from consideration. Counsel concede that such value cannot be recovered under the rule established in Pennsylvania (Lanigan v Kille, 97 Pa. 120, 39 Am. Rep. 797), unless the eviction was brought about by the fraud of the lessor; and it was therefore urgently argued that fraud had been established. The leading facts upon which the argument rests were before the Supreme Court of Pennsylvania in Pocono Co. v. Ice Co., and were thus commented upon (214 Pa., at page 645, 64 Atl., at page 399):

"The learned court was clearly right in declining to submit to the jury the question whether the American Ice Company had been evicted from the leased premises by the fraud of the Pocono Company. There was not a scintilla of evidence in the case to sustain the defendant's allegation of fraud. The acts or circumstances suggested as evidence of fraud were not sufficient to create in an unbiased mind even a suspicion of wrong. They are constantly occurring in transactions of this character, and are regarded as perfectly proper and legitimate. As has been repeatedly said, fraud is never presumed, but must be established either by direct proof or by facts clearly proved sufficient to warrant a presumption of its existence."

It is true that this language is only a dictum. The decision of the court was that no damages due to the eviction could be set off in that action, because the covenant for quiet enjoyment had not been broken at the time the suit was brought. Manifestly, therefore, the foregoing remarks of the court concerning the proper measure of damage to be allowed in a suit where the eviction could be considered were not called for by the decision, and in strictness may be disregarded. I do not feel bound by them, but, in view of the fact that the testimony offered in the present suit to prove a fraudulent eviction, while it is

more detailed than in the former suit, does not add much that is essential, I think the language of the Pennsylvania court is entitled to respectful consideration. But there is another, and a stronger, reason why the charge of fraud should not influence the award of damages to the complainant. It is to be noted that the fraud which will permit a lessee to recover the value of permanent improvements is the fraud of the lessor, while the fraud that is charged in the bill and is said to be established by the evidence is fraud on the part of Snyder and Miller, by which it is averred that they have individually profited. The seventh paragraph of the bill is as follows:

"Your orator doth further aver that the said Chester Snyder and Frank C. Miller, not regarding the said covenants of the said the Pocono Spring Water Ice Company, whereof they the said Snyder and Miller were officers as aforesaid, but contriving and fraudulently intending to violate the same and to procure the said lessee, your orator, to be evicted from the said premises and to deprive your orator of its said lease and property and improvements, and themselves unjustly, dishonestly, and against equity to appropriate and possess themselves of the same, did fraudulently and unlawfully conspire, combine, confederate, and agree to and with each other and with other parties and persons, whose names to your orator are unknown, to carry their said unlawful intention into effect; and thereafter, to wit, on or about the 4th day of April, 1903, by their own willful and voluntary act and acts did cause and procure all the real and personal property and all the corporate franchises of the said the Pocono Spring Water Ice Company to be sold at judicial sale to one Aaron Goldsmith, trustee, whereby the said corporation, the Pocono Spring Water Ice Company, did become dissolved and extinguished in law and incapable of being sued; and thereafter, to wit, on or about the 1st day of October, 1903, the said Snyder and Miller, together with the said Aaron Goldsmith, trustee, wrongfully, unjustly and against equity did cause your said orator to be evicted and dispossessed of the premises demised to it by the Pocono Spring Water Ice Company as aforesaid, and did cause and procure the said Aaron Goldsmith, trustee, to enter thereupon and to seize and possess himself of the said property and improvements; and thereafter, to wit, on or about the 5th day of August, 1903, did cause and procure a new corporation to be organized and created under the laws of the commonwealth of Pennsylvania styled 'The Pocono Pines Ice Company,' for the purpose of 'the supply of ice to the public,' in which said new corporation the said Chester Snyder was a stockholder, holding 59 shares, and the said Frank C. Miller was a stockholder, holding 385 shares out of a total of 571 shares issued; and thereupon the said Snyder and Miller did cause and procure the said Aaron Goldsmith, trustee as aforesaid, to convey to the said Pocono Pines Ice Company the lands, tenements, and premises aforesaid, together with the improvements placed thereon by your orator as aforesaid, all of which thenceforth and down to the time of filing this bill have been occupied, used, and enjoyed by the said the Pocono Pines Ice Company."

The evidence in support of these averments falls short of establishing fraud on the part of the corporate lessor, and I do not understand it to be seriously contended that the Pocono Company could be held liable for the individual and unauthorized acts of its president and treasurer, merely because these persons had been elected to their respective offices. It seem clear that, if the defendants Snyder and Miller have been guilty of fraud, the remedy at law is adequate.

One objection of the Pocono Company remains to be considered. It is argued that no part of the ice company's claim for damages due to the eviction can be allowed in this suit because the subject is res adjudicata, having been necessarily involved in the suit decided by the

Supreme Court of Pennsylvania. This, however, is a mistake. In that suit the only counterclaim of the ice company which could have been heard was the claim that the Pocono Company had broken its covenant to keep the buildings in repair; and for damages of this description the ice company does not now ask to recover. It agrees that upon this subject it had its day in court, and failed to offer the necessary proof. The Supreme Court of Pennsylvania thus disposed of the question:

"A like trouble arose when the defendant company attempted to prove the loss it had sustained by reason of the failure of the plaintiff to comply with its covenant to keep the premises in repair. Whatever damages the defendant suffered by reason of this default, it was entitled to set off in this action. It first conceived the measure of damages to be the value of the repairs which it had made, but it failed to show the amount it had expended for repairs, and hence the jury was given no data from which it could find a verdict. Subsequently the defendant called a witness to show the difference in the rental values of the premises by reason of the failure of the plaintiff to perform its covenant to repair. If that was the proper measure of damages, the difference was not shown, as the only witness offered for the purpose was properly held to be incompetent and his evidence was excluded."

But for damages due to the eviction, no counterclaim was then permitted, as will distinctly appear by the following quotation from the opinion:

"The covenant for quiet enjoyment was a distinct and independent covenant from that of the defendant to assume the Van Orden Bros.' contract. Wright v. Smyth, 4 Watts & S. 527; Obermyer v. Nichols, 6 Bin. 159, 6 Am. Dec. 439; Fame Ins. Co.'s Appeal, 83 Pa. 396. A breach of the covenant was not a bar to this action by the plaintiff. Obermyer v. Nichols, supra. If, however, at the time the action was brought, the defendant company had suffered any damages by reason of the failure of the plaintiff company to perform its covenant for quiet enjoyment, it could recoup the damages sustained by reason of the default. No fraud or bad faith having been shown on the part of the plaintiff, the defendant could not recover the value of the improvements it made on the premises for the prosecution of its business. Lanigan v. Kille, 97 Pa. 120. Nor can we see how, under the circumstances and evidence in the case, the defendant can in this action avail itself of any damages sustained by reason of the eviction. Notice to the defendant company to surrender possession of the leased premises was served after this action was brought, and it was not required to, and did not, remove from the premises until three months thereafter. There was, therefore, no eviction at the impetration of the writ in this case. There had been no interference with the defendant's beneficial enjoyment of the demised premises up to that date, and consequently no eviction. It follows that there could be no set-off in this action for a breach of the covenant for quiet enjoyment. A set-off is in the nature of a cross-demand, and, being incomplete at the impetration of the writ, is not available for the defendant in this action. Roig v. Tim, 103 Pa. 115; Gumbis, Barritt & Co. v. Cluff, 111 Pa. 512, 4 Atl. 920; Zuck v. McClure, 98 Pa. 541; Garrison v. Paul, 1 Penny. 380. If, however, the defendant company's claim for damages was ripe for action and was enforceable by way of set-off, it produced no competent evidence under the facts disclosed on the trial to prove the claim. The evidence offered was properly excluded by the trial judge."

Damages for the eviction were therefore not involved in the other suit, and may now be recovered.

I conclude, therefore, that the complainant is entitled to an account from the defendants, and a decree to that effect may be entered. It should not embrace, however, so much of the fund produced by the sheriff's sale as was awarded to the Fulmer mortgage, nor so much also

as was paid out of that fund to satisfy the Van Orden judgment against the Pocono Company. The sums to be accounted for are the balance of the purchase money after these two sums have been deducted, plus the amount afterwards received from the ice company in satisfaction of the judgment that was affirmed by the Supreme Court of Pennsylvania. A master will be appointed to state the account, and he will be directed to liquidate the claim of the ice company in accordance with the rules laid down in this opinion.