## Sattler v. Freedman et al.

*Paul Uetz* and *J. Joseph Stratton*, for plaintiff.

*Myron Jacoby* and *Harry A. Takiff*, for defendants.

KUN, J., October 18, 1943.—Plaintiff filed a bill in equity in this court against defendants seeking to restrain and enjoin them from further proceeding with foreclosures—one on a first mortgage and the other on a second mortgage—pending in two other courts of this county against certain premises in Philadelphia, of which plaintiff is the tenant under a lease subsequent to the mortgages. The second named defendant became the owner of the premises subsequent to the lease, and the mortgages were thereafter assigned to his nominee pursuant to a decree of the Supreme Court: Sheaffer v. Baeringer et al., 346 Pa. 32. Following the assignments, the foreclosure proceedings on the mortgages mentioned were instituted, to restrain which the bill in this case was filed, also praying for the assignment of the mortgages to plaintiff tenant. Respondents have filed preliminary objections to the bill.

The bill was drafted under the mistaken view that to obtain the relief prayed for it was necessary to show some unusual and extraordinary character of the use of the premises, the loss of which would cause irreparable damage, so that the denial of the relief would, as stated in one of the cases, be "unconscionable": Dollar Savings Bank, for use, v. Duff, 269 Pa. 29; Hopkins Manufacturing Co. v. Ketterer, 237 Pa. 285; Wunderle v. Ellis, 212 Pa. 618. The burden of the argument on the objections to the bill was, therefore, directed on both sides to that question. On behalf of plaintiff it was argued that the instant case presented such an unusual and extradordinary one, where irreparable damage would follow if the injunctive relief is not granted; and on behalf of defendants the argument was to the contrary. This direction of the argument was no doubt induced by the statement of the Supreme Court in Sheaffer v. Baeringer et al., supra (p. 35):

"If plaintiff, for the purpose of wiping out the leasehold interest, should institute or threaten foreclosure proceedings and refuse to accept payment of the mortgages if tendered by the lessee, the latter will not be without adequate means of protection . . .", citing the above cases.

There is no doubt that the cases cited were decided on the grounds stated. Counsel on both sides, however, have overlooked the fact that they are inapplicable to the instant case for the significant reason we will presently mention. Accordingly, it is unnecessary to consider the question whether or not the use of the premises in question by plaintiff lessee is of such an extraordinary nature and character, the deprivation of which would work such irreparable damage as to make the refusal to enjoin the proceedings unconscionable within the rationale of those cases.

In each of the cases cited, the foreclosure proceedings, enjoined for the exceptional and extraordinary reasons therein appearing, were instituted by third-party holders of the mortgages in no way connected or coöperating with or acting in pursuance of any agreement with the owner of the premises to do so. In such cases the third-party mortgagee undoubtedly has the right to foreclose on his mortgage, except that, in such unusual and extraordinary circumstances as were found in the cases cited, an assignment to the lessee may be directed, and the remedy of the lessee is against his lessor for damages for the violation of his implied covenant of quiet enjoyment, which brings us to a consideration of the real basis for the right of plaintiff to relief in this case.

The foreclosure proceedings here sought to be enjoined are not by a third-party holder of mortgages unrelated to and having no connection or common interest with the owner of the property, but have been instituted by the assignee of the original mortgagees which assignee, however, is the nominee of the present owner to whom they were ordered assigned by decree

of the Supreme Court: Shaeffer v. Baeringer et al., supra. The present owner had previously acquired the title by sheriff's sale on a judgment entered subsequent to the lease. Under the Act of June 16, 1836, P. L. 761, sec. 119, the defendant-owner, upon receipt of the sheriff's deed, became the "landlord" of the tenant. He could either affirm the lease, which he did by accepting rent thereunder, equivalent to an attornment; or compel the tenant to attorn to him by executing a new lease with him under the same conditions. In either case the implied covenant for quiet enjoyment was operative between them. In this situation entirely different legal principles apply. There is no legal duty owing by a third-party mortgagee to a subsequent lessee, and therefore he may ordinarily proceed to exercise his legal remedy to foreclose on his mortgage on default, even though this strict legal right is subject to control in such extraordinary circumstances as appeared in the cases cited, and an assignment of the mortgage to the tenant may be directed. However, as between a lessor and lessee there is a well-recognized implied covenant for quiet enjoyment which runs with the land and passes with its conveyance whether voluntary or involuntary: Rawle on Covenants for Title (4th ed.), p. 334; Jackson & Gross, Landlord and Tenant (2d ed.), secs. 993, 994, and 1013; 32 Am. Jur., Landlord and Tenant, §268, §282. The lessor or his successor is liable to the lessee for the breach of this covenant whether occurring through no fault of his or through his connivance with the mortgagee, the measure of damages only differing: Lanigan, to use, v. Kille, 97 Pa. 120 (1881) ; Einfeld v. Shermer, 56 Pa. Superior Ct. 4 (1914). In the Einfeld case, which went up from this court, substantial damages were allowed to be recovered by the lessee against the owner-lessor because the latter had arranged with the holder of the mortgage, though antedating the lease, to foreclose it, subsequent to which the tenant was compelled to attorn to the purchaser at the sheriff's sale. Indeed, it was stated that

the lessee was entitled to bring suit against his former landlord for breach of the covenant for quiet enjoyment as soon as the purchaser gave him notice to vacate the premises. In the instant case the owner of the premises by purchase at sheriff's sale subsequent to the lease has himself acquired the prior mortgages held in the name of his nominee. That he would be liable to the tenant for breach of the covenant for quiet enjoyment if the foreclosure proceedings were allowed to be concluded and result in the tenant's eviction is clear under the cases. While we have been unable to find a case in this jurisdiction in which the owner was restrained from proceeding and from having his nominee, holder of the mortgages, from proceeding under circumstances present in this case, there is every reason why the tenant should have the benefit of such a remedy and it has been so decided in at least one case which we have been able to find in another jurisdiction: American Welding Co. v. William H. Haskell Mfg. Co., 107 Atl. 213 (R. I., 1919). In the case just cited the original lessor's grantee did not buy the outstanding mortgage as in the instant case, but he permitted a mortgage ahead of the lease to be foreclosed and he bought the property in at the sheriff's sale, following which he sought to evict the tenant. The injunction was granted because the eviction would result in a breach of the covenant for quiet enjoyment which ran with the land and was binding upon defendant after it acquired the title subject to the lease. Likewise in the instant case the present owner cannot be permitted to do by indirection what he could not legally do directly—terminate the lease subject to which he took the title. Accordingly, the court may properly enjoin the defendant-owner and the other defendant, his nominee, the holder of the mortgages, from proceeding with the foreclosures thereon. The objections to those prayers of the bill are overruled.

As to the other prayers of the bill, that the court direct the assignment of the mortgages to the plaintiff tenant, it is equally clear that as between the lessor and the tenant the former is entitled to have them under the very statute they were ordered assigned to the owner in Sheaffer v. Baeringer et al., supra. As to the prayers of the bill to enjoin defendants from assigning the mortgages or conveying or encumbering the premises, there is no basis in law or equity for such action by the court, and the preliminary objections to the bill as to those prayers must be sustained. As to any fears of plaintiff of what may be done by some subsequent owner or assignee of the mortgages, we may repeat here what was said by Mr. Justice Stern in that case in commenting on the lessee's fear that the present owner might deprive him of possession of the premises if the mortgages were assigned to him as directed by the court, namely (p. 35) "that sufficient unto the day is the evil thereof". Any grantee of the premises from the present owner must, of course, take subject to the lease, and the lessee will always be protected by the covenant for quiet enjoyment. Any assignee of the mortgages, though they antedate the lease, must take them subject to any legal rights of the lessee to the possession of the premises. It is unnecessary to go any further with the case at this time, except to point out that even should the mortgages be assigned to an innocent third party, if there could be one, considering the record notice of these proceedings, the plaintiff lessee would be protected against foreclosure proceedings and consequent dispossession either on the irreparable damage theory mentioned in the cases cited by Mr. Justice Stern, supra, or, if plaintiff's case did not come factually within the scope of those cases, the holder of the mortgages would very likely be compelled to assign them to plaintiff tenant on the payment of the amount due thereon, under the following language of Mr. Justice Mestrezat in the case of Hopkins Manufacturing Co. v. Ketterer, supra, p. 292:

"We are at a loss to see what more he [holder of the mortgage] was entitled to either at law or in equity, and it is not apparent how he could be injured in any way by accepting the money and assigning the instrument. The assignment would be without recourse, and hence no liability would attach to the assignor on failure to collect."

Preliminary objections were also directed to many averments of the bill, which as properly pointed out on behalf of defendants are res adjudicata by the decision of the Supreme Court in Sheaffer v. Baeringer et al., supra. Accordingly, all those objections are sustained.