AMERICAN ICE CO. v. POCONO SPRING WATER ICE CO. et al.

(Circuit Court of Appeals, Third Circuit.   November 28, 1910.)

No. 1,428.

1. LANDLORD AND TENANT (§ 130*)—BREACH OF COVENANT FOR QUIET ENJOYMENT—DAMAGES.

Under the law of Pennsylvania that a lease of lands implies a covenant for quiet possession, and that the measure of damages recoverable by a lessee for an eviction before the expiration of the term, in the absence of fraud or bad faith on the part of the lessor, is the consideration paid to the lessor and not the value of the unexpired term, the same rule of damages governs in a case where the lease contains an express covenant for quiet enjoyment.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 479; Dec. Dig. § 130.*]

2. LANDLORD AND TENANT (§ 130*)—BREACH OF COVENANT FOR QUIET ENJOYMENT—DAMAGES.

Under the law of Pennsylvania, a lessee cannot recover as damages for breach of a covenant for quiet enjoyment the value of the unexpired term, nor the value of improvements made, nor the cost of removing from the demised premises in the absence of fraud or bad faith on the part of the lessor; and, where the lessor is a corporation, such damages are not recoverable against it on the ground that the lessee's eviction was brought about by the fraud of its officers for their individual benefit, and not that of the corporation.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 479; Dec. Dig. § 130.*]

3. LANDLORD AND TENANT (§ 130*)—BREACH OF COVENANT FOR QUIET ENJOYMENT—DAMAGES.

The lessee of an ice plant for a term of 16 years in the lease assumed a contract made by its lessor to furnish ice to a consumer during the next two seasons at a stated price.   The market price of ice having advanced during the second season, it refused further performance of the contract, and the purchaser recovered judgment for damages for breach of the contract against the lessor, which, in turn, recovered over against the lessee.   At the end of four years, the lessee was evicted on a sale of the plant under a prior mortgage.   Held, that it was not entitled to recover as damages for the eviction any part of the amount it was compelled to pay on account of its own breach of the contract to furnish ice which it had assumed.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 479; Dec. Dig. § 130.*]

4. CORPORATIONS (§ 626*)—DISSOLUTION—DISTRIBUTION OF ASSETS—ALLOWANCE TO COUNSEL.

Counsel employed by the officers of a dissolved corporation charged under the Pennsylvania law with the winding up of its affairs, who successfully defended a suit brought to establish a claim against the fund arising from the sale of the corporation's property, are entitled to an allowance from the fund for their services.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2475; Dec. Dig. § 626.*]

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

In Equity. Suit by the American Ice Company against the Pocono Spring Water Ice Company and others. Decree (179 Fed. 868) for complainant, and defendants appeal. Modified and affirmed.

Ira J. Williams, Aaron Goldsmith, and Simpson & Brown, for appellants.

John G. Johnson, Frank R. Savidge, and Henry R. Edmunds, for appellee.

Before BUFFINGTON and LANNING, Circuit Judges, and CROSS, District Judge.

LANNING, Circuit Judge. A brief statement of the essential facts contained in the large record of this case will be helpful to a clear understanding of it.

On October 7, 1895, the Pocono Spring Water Ice Company, hereinafter called the Pocono Company, was incorporated for a perpetual term under the laws of the state of Pennsylvania. On November 1, 1898, it gave to Henry Fulmer a mortgage on its real estate, being its ice plant, to secure the payment of its bond for $25,000 in five years, with interest payable semiannually, and with power of attorney for the entry of judgment on the bond in case of default in the payment of the principal when due or of any installment of interest for six months after it should become due. On July 26, 1899, it entered into a written agreement with Van Orden Bros. of Paterson, N. J., to sell to Van Orden Bros. "in such quantities as they may need in their ice business up to 12,000 tons during each year during the term of this agreement, at the rate of $1.30 per ton," which term was "for the ice season(s) of 1899 and 1900." On October 19, 1899, it leased its ice plant to the American Ice Company, hereinafter called the American Company, for a term of 10 years from November 1, 1899, with an option to the latter company for an additional term of six years, the lease containing a covenant by the Pocono Company for quiet possession and an assumption by the American Company of the contract with Van Orden Bros. The American Company failed to furnish any ice to Van Orden Bros. for the season of 1900, and on January 11, 1901, Van Orden Bros. commenced an action at law against the Pocono Company for breach of its contract with them. While this action was pending, on January 16, 1903, the administrator of the estate of Henry Fulmer, he being then dead, entered judgment against the Pocono Company on the bond secured by the Fulmer mortgage for $28,153.12 (no interest having been paid for more than a year), and immediately caused a writ of fieri facias to be issued which was returned nulla bona on January 27, 1903. On February 26, 1903, the Pocono Company waived its right to inquisition proceedings and agreed to the sale of its property under the alias execution issued that day, and on the same day a levy on its property was made. On April 4, 1903, the property was sold to Aaron Goldsmith, trustee, for $50,250. On April 27, 1903, Van Orden Bros. recovered judgment in their action against the Pocono Company for $10,537.13, which judgment was paid out of the surplus moneys remaining in the hands of the

sheriff after the sale under the Fulmer execution.    On June 1, 1903, the Pocono Company brought suit against the American Company to recover the amount which the Pocono Company had been compelled to pay to Van Orden Bros., and on September 28, 1904, recovered judgment against the American Company for principal, interest, and costs, being $14,338.81.    On April 9, 1906, the Supreme Court of the state of Pennsylvania affirmed the last-mentioned judgment.

On April 28, 1906, the American Company filed its bill in equity in the case now before this court.    The bill sets out that by reason of the sale of the Pocono Company's property and franchises at judicial sale on April 4, 1903, that company became dissolved and incapable of being sued, and that it thereby became the duty of Snyder and Miller, president and secretary of the company, to wind up its affairs.    It also sets out the provisions of the lease above mentioned, including the covenant for quiet possession, avers that, relying on the covenant, the American Company had expended $17,000 in improvements; that Snyder and Miller fraudulently conspired to have the Pocono Company's property sold at judicial sale to Aaron Goldsmith, trustee; that on August 5, 1903, they caused a new corporation to be organized in which Snyder and Miller were stockholders and to which Goldsmith conveyed the property; that on or about October 1, 1905, they caused the American Company to be evicted from the demised premises; and that, by reason of the eviction, the American Company had lost and was deprived of the unexpired portion of its term which was of the value of $12,000, and had also lost stored ice of the value of $8,000. It further sets out the American Company's assumption of the contract with Van Orden Bros., the recovery of the judgment by Van Orden Bros. against the Pocono Company, and the obligation of the American Company to pay the amount of that judgment; and avers that, by reason of its eviction before four years of the term of sixteen years had expired, the consideration for the assumption of the Van Orden contract had failed, and that the American Company was entitled to demand and receive from the Pocono Company the sum of $10,000 on account thereof, that the Pocono Company was indebted to it in the sum of $43,000, that since April 4, 1903, there had been no person against whom the American Company could bring an action at law for the recovery of its damages, that the only assets of the Pocono Company were $22,000 (being the proceeds of the sheriff's sale of the Pocono Company's property after satisfying the Fulmer and Van Orden judgments), and the judgment recovered by the Pocono Company against the American Company, and that the Pocono Company was insolvent.    The prayer was for the appointment of a receiver of the Pocono Company, an accounting by Snyder and Miller, and an injunction to restrain the Pocono Company and Snyder and Miller from collecting the judgment of the Pocono Company against the American Company.    The joint answer of the defendants denies the fraud charged in the bill, or that the American Company was evicted by the defendants, or that the American Company is entitled to anything from the Pocono Company on account of the former company's assumption of the Van Orden contract, or to the sum of $43,000 or

any other sum, and avers that the subject-matter of the American Company's claim was litigated and adjudicated against that company in the former suit of the Pocono Company against the American Company.

On June 21, 1906, the answer having been filed and the American Company's motion for an injunction pendente lite having been denied, the American Company paid to Snyder and Miller, the officers representing the Pocono Company in winding up its affairs, the amount of the judgment due to the Pocono Company, which, as we have seen, had been previously affirmed by the Supreme Court of Pennsylvania. Thereupon the case went to an accounting. The Pocono Company proved to be insolvent. In its final decree the Circuit Court adjudged that the amount for distribution among the general creditors was $21,552.36. Of this sum it directed $4,858.77 to be paid to the American Company as its proportionate part of a claim of $9,178.32 allowed in its favor. The claim of the American Company is (1) for the value of the portion of the term of the lease unexpired at the time of the eviction—that is, for 12 of the 16 years—$30,000; (2) for the cost of removing from the leased premises at the time of the eviction its machinery and tools, $1,275.47; and (3) for twelve-sixteenths of $10,537.13, which was the amount of the judgment recovered by Van Orden Bros. against the Pocono Company, being $7,902.85. The Circuit Court disallowed the first item of $30,000, but allowed the second and third items, aggregating $9,178.32. The American Company contends that the Circuit Court erred in not including in its claim the first item of $30,000, and the Pocono Company and its representatives contend that the court erred in allowing the second and third items. These contentions present the first question for our consideration.

Counsel for the Pocono Company argue that it is a settled rule of law in Pennsylvania that a lessee evicted from the premises demised to him cannot recover from the lessor, upon a covenant for quiet enjoyment, for the value of his unexpired term except in a case where the eviction is the result of the lessor's fraud. In the absence of fraud by the lessor, the lessee, they say, is entitled to recover only the rent paid by him on account of the unexpired term, which sum is allowed to him as damages for the partial failure of the consideration for which the rent was paid. Counsel for the American Company, on the other hand, urge that, if an express covenant for quiet enjoyment be broken by eviction of the lessee, the lessor is liable for the value of the unexpired term, not only where the eviction is caused by his fraud, but where it has occurred through his fault or neglect without fraud.

In Brown v. Dickerson, 12 Pa. 372, where, on a breach of the covenant for quiet possession, the grantee, in order to retain possession, was compelled to purchase at a sale under a mortgage antedating the deed of conveyance which contained a covenant for quiet possession, it was held that the measure of damages was the value of the land at the time of making the contract or the price paid for it. In McClure's Executor v. Gamble, 27 Pa. 288, land was devised to Gamble for life. He was evicted under a superior title, and, in an action against the representatives of his devisor's predecessor in title, it was held that:

"The extreme limit of the damages in such a case is the purchase money and interest, and the tenant for life can have only his proportion of it according to the value of his estate as against that of the remainder, and the balance belongs to the remaindermen."

In McClowry v. Croghan's Administrator, 31 Pa. 22, it was held that the measure of damages for the breach of a contract to lease is the same as in the case of the breach of a contract to sell; that is, that, in the absence of fraud or bad faith on the part of the defendant, he may recover nothing for the loss of his bargain, but may recover back the purchase money he has paid. In Lanigan v. Kille, 97 Pa. 120, 39 Am. Rep. 797, there was a mining lease for 15 years executed to Lanigan. At the end of four years, Lanigan's assignee was evicted under a superior title. There was no express covenant for quiet enjoyment, and the action against the lessor was based on the breach of the implied covenant for quiet enjoyment. The court said that it is settled by abundant authority that the word "concessi" or "demisi" in a lease implies a covenant for quiet possession during the term. The only contention in the case was as to the proper measure of damages. Attention was called to the fact that the eviction was by a paramount title, and not by any fraud of the lessor. Conceding that in England the measure of damages for the breach of an express covenant for quiet possession in a lease is the value of the unexpired term at the time of the eviction, the court proceeds to consider whether the same rule applies in Pennsylvania. "Upon this point," says Mr. Justice Paxson, "the authorities are meager and by no means uniform. The true rule, however, would appear to be that, in an action by a lessee against his lessor for an eviction by a paramount title, the measure of damages is the consideration paid and such mesne profits as he has paid or may be liable for. The consideration for a lease is usually the rent reserved. If the tenant has enjoyed the possession of the demised premises, he has the precise equivalent for the rent. If he has paid the rent in advance, he is entitled to recover it back in the form of damages for the eviction."

Since it is the conceded law of the state of Pennsylvania that a lease of lands implies a covenant for quiet possession, and that in an action on such a covenant the measure of damages, in the absence of fraud or bad faith on the part of the lessor, is the consideration paid to the lessor and not the value of the term at the time of eviction, we can see no reason for adopting a different rule in the case of an express covenant for quiet possession. The express covenant is but a declaration of what the law would imply if the lease were silent on the subject of quiet possession. In the case in hand, the lessor was the Pocono Company. No fraud of any kind, as pointed out in the opinion of the Circuit Court (165 Fed. 714), is charged against it in the bill. The charge of fraud is against Snyder, and Miller, as individuals, who, it is alleged, sought through a judicial sale to possess themselves of the Pocono Company's property. If they were guilty of fraud, the American Company had a remedy against them in an action at law. This was the conclusion of the Circuit Court, and we

concur, therefore, in its opinion that the first item of $30,000 in the American Company's claim should be disallowed.

The same reason which leads us to the conclusion that the first item should be disallowed induces us to think the second item of $1,275.47 for cost of removing machinery and tools should be disallowed. That cost no more represents an item which the lessee is entitled to recover than would the cost of improvements put on the lessor's property by the lessee. That there can be no recovery for the cost of such improvements, in the absence of fraud or bad faith on the part of the lessor, was expressly ruled in Lanigan v. Kille, and counsel for the American Company admit that for such cost there could be no recovery in the present case.

We also think the third item of $7,902.85 should be disallowed. That item is twelve-sixteenths of the judgment which the Pocono Company was compelled to pay to Van Orden Bros., and which the American Company was compelled to refund to the Pocono Company. It was allowed by the Circuit Court on the theory that the assumption of the Van Orden contract by the American Company was a part of the consideration for the whole of the term of 16 years, and because 12 of the 16 years were lost to the lessee by reason of the eviction. But the Pocono Company's financial troubles were seriously increased by the highly culpable conduct of the American Company. In 1900 the price of ice had increased. It had previously covenanted with the Pocono Company to assume the Van Orden contract and to supply to Van Orden Bros. ice at $1.30 per ton. It was a profitable contract even at that price. Its failure to furnish the ice can be explained by nothing but its avarice and dishonesty. It not only repudiated its contract with the Pocono Company to supply ice to Van Orden Bros. for the season of 1900, but refused for the two or three remaining years that the Pocono Company continued to own the demised property, and while the Van Orden suit was pending, to relieve the Pocono Company from the demands of Van Orden Bros. It was not until January 16, 1903, that the Fulmer suit, under which the property was sold, was commenced. The failure of the American Company to keep its contract with the Pocono Company was without doubt one of the causes of the Pocono Company's downfall. Furthermore, the American Company can certainly stand now in no better position than if it had kept its contract to furnish ice to Van Orden Bros., and then at the end of four years been evicted. In such case, what right of recovery from the Pocono Company would it have had? Could it successfully have maintained a claim that the $10,537.13—which it must be assumed represents the difference between the general market price in 1900 of the ice that the Van Orden contract called for and its contract price at $1.30 per ton—was paid by it as a part of the consideration for the lease for the full term of 16 years? Certainly not, for it would not have paid that sum. It would simply have failed to realize by that amount the full market value of the ice. Could it have recovered on the theory that by the eviction it lost the opportunity during the remaining 12 years to make profits that would have balanced

what, by reason of the Van Orden contract, it failed to realize in 1900? Certainly not, for that would be but allowing the American Company to recover a part of the value of the unexpired term. In any aspect of the matter, it is our opinion that the theory on which the Circuit Court allowed the item of $7,902.85 is erroneous, and that the item should be rejected.

The decree of the Circuit Court directed each party to pay one-half of the costs. Error is assigned on that point. As this court finds the claim of the American Company to be wholly without merit, it should bear all the costs.

The decree made no allowance out of the funds of the Pocono Company to its counsel. Error is also assigned on that point. The American Company commenced this suit. Snyder, Miller, and Richards (the last brought in as a defendant after the suit was commenced), officers of the Pocono Company, whose duty it was to wind up that company's affairs, were compelled to employ counsel to defend the suit. They have defended it successfully, and are entitled to compensation. An allowance will be made to them for their services in the Circuit Court and in this court of $2,000.

The decree sets out the total amount received by Snyder, Miller, and Richards, the preferred claims to be paid out of such receipts and the method of distributing the remainder amongst the general creditors. As so many parties not in this suit are interested in it, it should not be reversed. It should be amended by striking out the allowance of $1,858.77 to the American Company by allowing $2,000 to the counsel for the Pocono Company, by putting the costs in the Circuit Court and in this court (except the fees of the master for taking and stating the account, which should be directed to be paid out of the fund) upon the American Company, and by making the necessary changes in the distributive shares of the general creditors.

As thus modified and amended, the decree will be affirmed.